Joe J. JORDAN, James E. Mitchell and Jordan, Mitchell, Inc., on their own behalf and on behalf of all others similarly situated,

v.

Arnold T. BERMAN, Myron J. Berman and John J. Pettit, Jr., Prothonotary of the Court of Common Pleas of Philadelphia County.

Civ. A. No. 89–8172.

United States District Court, E.D. Pennsylvania.

Feb. 22, 1991.

Sharon K. Wallis, Philadelphia, Pa., for plaintiffs.

Kathy J. Langley, Steven R. Waxman, Philadelphia, Pa., for Bermans.

Maria L. Petrillo, Philadelphia, Pa., for Pettit.

## MEMORANDUM

WALDMAN, District Judge.

Presently before the court are defendants' motions to Dismiss for Failure to state a Claim Upon Which Relief can be Granted or in the Alternative for Summary Judgment. Because virtually no discovery has been conducted and the motions clearly are premised upon plaintiffs' failure to state a cognizable claim in their complaint, the court treated them as Fed.R.Civ.P. 12(b)(6) motions and applied the standard appropriate thereto. Oral argument was held and proceeded on this basis.

Plaintiffs assert six claims in their complaint. In the first count, plaintiffs seek declaratory and injunctive relief against defendant Pettit, the Prothonotary of the Court of Common Pleas of Philadelphia, for alleged due process violations in issuing writs of execution permitting the garnishment of bank accounts pursuant to confessed judgments, under Pa.R.Civ.P. 2950 *et seq.* The remaining counts, all against defendants Arnold and Myron Berman, assert a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, violation of plaintiffs' civil rights under 42 U.S.C. § 1983, and state law claims of fraud and malicious use and abuse of process.

### I. *Legal Standard*

In deciding a motion to dismiss for failure to state a claim, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645

(3d Cir.1989). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

A complaint may be dismissed when the facts pled and the reasonable inferences therefrom are legally insufficient to support the relief sought. *Commonwealth ex rel. Zimmerman v. PepsiCo,* 836 F.2d 173, 179 (3d Cir.1988). A motion to dismiss may be granted as to some portions of a complaint while denied as to others. *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982); *Fielding v. Brebbia,* 399 F.2d 1003, 1006 (D.C.Cir.1968). Claims brought under RICO are subject to the same pleading standards as other claims under Rule 12(b)(6). *See H.J., Inc. v. Northwestern Bell,* 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Rose v. Bartle,* 871 F.2d 331, 355–56 (3d Cir.1989).

## II. *Factual Allegations*

The pertinent allegations in the complaint, viewed in a light most favorable to the plaintiffs, are as follows. On July 8, 1981, plaintiff Jordan, on behalf of Joe J. Jordan, FAIA, Inc., a Pennsylvania corporation, executed a lease to rent the fifth floor of an office building at 1920 Chestnut Street in Philadelphia from defendant Arnold T. Berman, trading as H.P. Realty, for a term commencing September 1, 1981 and ending August 1, 1986. On or about October 1, 1981, plaintiffs Jordan and Mitchell formed Jordan, Mitchell, Inc., an architectural firm that operated out of said premises.

On May 2, 1986, by its terms, this lease automatically renewed for a one-year period commencing August 1, 1986. On May 16, 1986, H.P. delivered a lease termination notice to Jordan, Mitchell, Inc. dated April 30, 1986. When the plaintiffs' attorney advised H.P. that in their view the lease had been renewed automatically, defendant Myron Berman told plaintiff Jordan that he would "retaliate" if plaintiffs continued to occupy the premises pursuant to the purported renewal. Acting on instructions

from Myron Berman, unnamed individuals disconnected electrical wiring in plaintiffs' offices on May 22, 1986 and obstructed the entrance thereto on May 23, 1986 by placing trash nearby. As a result, plaintiffs allegedly had to expend sums of money to rectify this situation.

Through counsel, the parties to the lease thereafter negotiated an extension, substituting Jordan, Mitchell, Inc. as lessee and extending the lease for a term of three years, commencing August 1, 1986. The extension agreement was executed by plaintiffs on October 29, 1986 and by H.P. on December 8, 1986, and contained a mutual release of all claims arising under the initial lease.

The lease provided to lessor the option of charging lessee additional rent in an amount equal to their proportionate share of any increases in taxes or operating expenses. Such rent increases would be predicated upon notice by the lessor. H.P. never increased the rent pursuant to this clause during the term of the original lease. The parties never specifically discussed this provision of the lease during the course of their negotiations over the lease extension.

On February 10, 1988, H.P. billed plaintiffs for $1,416.20, a proportional amount of real estate tax increases for the years 1982 to 1988. Plaintiffs paid this amount to the lessor before "realizing" what it was for. Plaintiffs refused to pay the lessor additional rent adjustments that were claimed on October 13, 1988 as a result of increased operating expenses. Defendant Myron Berman then requested Philadelphia Gas Works to terminate gas service to the leased premises. Plaintiffs avoided a termination of service by having PGW bill them directly.

Plaintiffs allege that defendants engaged in similar conduct with respect to other tenants. When Diversified Community Services ("DCS"), another tenant in another building under defendants' control, refused to pay a retroactive rent increase billed on December 7, 1987 and attempted to move, defendants "refused" them permission to utilize the service elevators for

this purpose until they had paid the rent demanded. DCS was permitted to move from the building after it settled a suit they filed against defendants as a result of that dispute.

The standard preprinted "Form 60" lease contained a cognovit clause entitling H.P. to confess judgment upon a default in rental payments. The warrant of attorney authorizing the confession of judgment appears on the reverse side of the page with the parties' signatures. This clause also was not specifically discussed during the lease extension negotiation.

Plaintiffs rejected an offer of March 7, 1989 from H.P. to waive its October 13, 1988 claim for additional rent if plaintiff corporation would execute a new three-year lease. On May 16, 1989, counsel filed with the Prothonotary of the Court of Common Pleas of Philadelphia a Complaint in Confession of Judgment against plaintiffs on behalf of Arnold Berman and H.P. Realty, claiming $41,082.62 in overdue rent plus related charges, minus plaintiffs' security deposit. The required verification and affidavit were executed by Myron Berman as "managing agent." Later that day, the Prothonotary issued a Writ of Execution which was served by the Sheriff on Fidelity Bank, effectively freezing plaintiffs' corporate checking account in the amount of the judgment. As a result, the account became overdrawn and six items were returned unpaid.

On May 19, 1989, plaintiffs received from the garnishee notification of the Writ and copies of the documents filed in the Common Pleas Court. On May 24, 1989, plaintiffs filed a petition in the Court of Common Pleas of Philadelphia to open and/or strike the confessed judgment. The state court immediately issued a Rule to Show Cause why the judgment should not be opened or stricken and vacated the garnishment of plaintiffs' account upon the posting of $10,000. On July 21, 1989, the state court ordered that the judgment be opened, and plaintiffs' $10,000 was returned to them.

The underlying case is currently pending in state court. Plaintiffs have filed a counterclaim in that case for return of the $1,416.20 paid in February 1988 and a $1,350 security deposit, as well as $419 allegedly paid by plaintiffs during the course of the lease for cleaning which should have been done by the landlord.

### III. *Plaintiffs' RICO Claim*

Plaintiffs claim that the Bermans violated RICO. They do not specify which section of the statute may have been violated, citing only 18 U.S.C. § 1961. Construing the complaint most liberally, plaintiffs' allegations at most support claims for violations of § 1962(a) and (c). The alleged enterprise is said to be the association in fact of defendants Arnold and Myron Berman in the acquisition, management and leasing of commercial property. Plaintiffs appear to allege that being associated with such an enterprise, the defendants conducted its affairs through a pattern of racketeering activity and invested income in the enterprise that they derived from this pattern of activity.

 Because plaintiffs have failed to allege any facts from which one could infer that the $11,591.20 loss they claim or any other damages were causally related to defendants' investment of funds in the alleged enterprise, they have failed to state a cognizable claim under § 1962(a).[1] 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir.1990); *Rose v. Bartle*, 871 F.2d 331, 357 (3d Cir.1989); *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107, 109 (E.D.Pa.1986); *Rich Maid Kitchens v. Pennsylvania Lumbermens Mutual Ins. Co.*, 641 F.Supp. 297, 311 (E.D.Pa.1986).

---

**1.** For purposes of § 1962(c), the defendant and the enterprise must be distinct. *U.S. v. Turkette,* 452 U.S. 576, 582, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 633 (3d Cir.1984). For purposes of this motion, the court finds that plaintiffs adequately have alleged an association in fact, each participant in which may be a liable "person" under RICO. *See Haroco v. American Nat. B. & T. of Chicago,* 747 F.2d 384, 401 (7th Cir.1984).

■ Defendants contend that plaintiffs have failed adequately to allege a pattern of racketeering activity which is necessary to sustain a claim under either section of RICO. *See* 18 U.S.C. § 1962. To prove a pattern of racketeering activity under RICO, a plaintiff must set forth at least two predicate acts and "must show that the racketeering predicates are related and that they amount to or pose a threat of continued activity." *H.J., Inc. v. Northwestern Bell*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). The essence of a pattern of racketeering activity is continuity and relatedness. Continuity can be shown by a series of related predicates extending over a substantial closed period of time or by related predicates that "themselves include a specific threat of repetition extending indefinitely into the future...." *Id.*, 109 S.Ct. at 2902. "Congress was concerned in RICO with long-term criminal conduct." *Id.*

■ Plaintiffs allege that defendants committed several predicate acts.[2] They allege that defendant Myron Berman's request to PGW to terminate service to the leased premises after plaintiffs refused to pay the increased rent constituted theft by extortion under 18 Pa.Cons.Stat.Ann. § 3923. Plaintiffs can cite to no case in which such an action by a landlord in these circumstances was held to be theft by extortion, and the language of and cases decided under that section suggest that it is not.

■ Plaintiffs allege that lessor intentionally refrained from raising rents during the term of the original lease to lull plaintiffs into thinking that rents would not be increased in the future. Plaintiffs claim that when the lessor subsequently sought increased rent pursuant to the proportionality term of the lease, this action constituted theft by deception by the defendants under 18 Pa.Cons.Stat.Ann. § 3922. Plaintiffs can cite to no case in which such an action was held to constitute this or any other crime.[3] Moreover, acts that do constitute theft under state law are not predicate acts for purposes of RICO. 18 U.S.C. § 1961(1).

■ Plaintiffs allege that defendant Myron Berman made false written statements in verifying the Complaint in Confession of Judgment which constituted the offense of unsworn falsification to a public authority. This clearly is not a cognizable predicate offense. Plaintiffs allege that this conduct was done "through the use of interstate mail and/or interstate telecommunications, and therefore constitute mail fraud and/or wire fraud." Plaintiffs do not specify what statement in the verification was false, and do not specify what scheme to defraud such transmission was made in furtherance of.

What plaintiffs do allege adequately, if circuitously, is that defendant Myron Berman caused tenants to be billed for amounts they did not owe and then attempted to coerce payment or lease extensions on terms more favorable to defendants. Taken in this light, the alleged acts of vandalism, interference with tenants' ingress and egress, the threat to "retaliate" and other unwarranted actions linked to plaintiffs' refusal to pay increased rent or agree to a new lease, could be viewed as extortionate.[4] Also, demands for payments

---

**2.** While plaintiffs allege conduct by "the defendants" in several instances, there is no allegation of any specific predicate act committed or abetted by defendant Arnold Berman. No defendant can be liable under RICO unless he participates in two or more predicate offenses. *Banks v. Wolk, supra.* Plaintiffs do not allege what the scope of Myron Berman's authority was; what, if any, knowledge Arnold Berman had of his co-defendant's activities; or, what, if any, benefit he derived from them. The court finds, however, that plaintiffs' general allegation of agency and common interest is sufficient, if just barely, to plead respondeat superior liability for purposes of surviving a motion to dismiss.

*See Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1361 (3d Cir.1987).

**3.** The court expresses no opinion as to whether such alleged conduct, if proven, would constitute a legal waiver of the right to enforce that term of the agreement. The court cannot find, however, that the failure to bill for amounts it admittedly could have under the original lease terms would constitute an act of fraud by H.P. and its agents.

**4.** The court does not suggest that action or threatened action by a landlord to secure increased rental payments to which he reasonably

not reasonably believed to be owing could constitute predicate acts if the mails or interstate wires were used, although the allegations in this regard are obtuse.

■ Two or more predicate acts, however, are not alone sufficient to establish a pattern of racketeering activity. *H.J., Inc., supra,* 109 S.Ct. at 2900; *Sedima, supra,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. In determining the existence of a sufficient pattern, the Third Circuit has adopted a multi-factor approach that considers the number and similarity of acts, the length of time involved, the number of victims and perpetrators and the nature of the activities. *Shearin v. E.F. Hutton Group,* 885 F.2d 1162, 1166 (3d Cir.1989); *Barticheck v. Fidelity Union Bank/First Nat. State,* 832 F.2d 36, 39 (3d Cir.1987).

Plaintiffs allege that defendants engaged in several wrongful acts over a period of at least two and a half years.[5] The two named defendants are the only alleged perpetrators. While plaintiffs identify only two specific victims, they allege that there are others.

In *Marshall–Silver Construction Co. v. Mendel,* 894 F.2d 593 (3d Cir.1990), the Court stated that it was "reluctant to embrace" the interpretation of continuity as discussed in *H.J., Inc.* as solely a temporal concept. The Court stated that:

> Virtually every garden variety fraud is accomplished through a series of wire or mail fraud acts that are related through purpose and are spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent

solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit over an extended period of time.

*Marshall–Silver,* at 597. The Court concluded that it was "unlikely that Congress intended RICO to apply in the absence of a more significant societal threat." *Id.*

■ Plaintiffs suffered a single substantive injury of limited impact from defendants' efforts to collect rent increases to which they allegedly were not entitled. This case appears to be a "garden variety" landlord-tenant dispute that entails no substantial societal threat. Indeed, the conduct that plaintiffs label as criminal may well be merely aggressive, or at most tortious, conduct in the context of a classic landlord-tenant dispute. In the context of a motion to dismiss, however, it cannot be determined beyond doubt at this time that, consistent with their allegations, plaintiffs will be unable to prove that as a routine way of doing business, defendants attempted to coerce favorable lease extensions and payment of dubious charges from a number of tenants. If this can be shown, then plaintiffs may prevail on their RICO claim. *See Swistock v. Jones,* 884 F.2d 755, 759 (3d Cir.1989).

Accordingly, the court finds that plaintiffs have set forth a legally sufficient RICO claim, and Count VI of their Complaint will not be dismissed.

### IV. *Plaintiffs' Due Process Claim Against the Prothonotary*

Plaintiffs seek only injunctive and declaratory relief in their cause of action against Mr. Pettit as Prothonotary of the Court of Common Pleas of Philadelphia.[6] They seek a declaration that the Pennsylvania proce-

---

believes he is entitled would support a finding of extortion. *See Rothman v. Vedder Park Management,* 912 F.2d 315, 318 (9th Cir.1990).

5. Defendants contend that because of the release provision in the extension agreement, plaintiffs may not plead as predicate acts any conduct undertaken in connection with the initial lease. Plaintiffs counter that they did not intend or agree to release defendants from liability for acts of extortion or fraud. The record is devoid of any evidence of the parties' definition or understanding of "claims arising under"

the initial lease and this question cannot be resolved in the context of this motion.

6. Plaintiffs initiated this cause as a class action. The court granted plaintiffs' oral motion at the commencement of argument to withdraw the class designation. Counsel explained that she added the class designation when she contemplated filing for a TRO and preliminary injunction, but then changed her mind about how to proceed with this aspect of the litigation.

dures pertaining to confession of judgment are unconstitutional to the extent that: (a) they permit the entry of judgment without a prior judicial or quasi-judicial review of the supporting documents to determine that it is warranted; and, (b) they permit the issuance of writs of execution for the garnishment of bank accounts prior to notice and an opportunity to move to strike the judgment or a judicial finding of exigent circumstances. They also seek to enjoin the enforcement of those procedures by the Prothonotary.

It is axiomatic that a court may only exercise jurisdiction over an actual case or controversy. To satisfy this justiciability requirement, the controversy must be real and substantial. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1936), *reh'g denied,* 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937). To warrant equitable relief, a perceived threat must be real and immediate and must remain so through the course of the litigation. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105, 109, 103 S.Ct. 1660, 1666, 1669, 75 L.Ed.2d 675 (1983); *Salvation Army v. Department of Community Affairs of the State of New Jersey,* 919 F.2d 183, 192 (3d Cir.1990); *Davis v. Thornburgh,* 903 F.2d 212, 222 (3d Cir. 1990).

■ At the time this action was initiated, the confessed judgment against plaintiff corporation had been opened by the state court, the garnishment of plaintiff's bank account had been set aside and the $10,000 plaintiff had been required to escrow had been returned to it. Thus, plaintiffs were not when this suit was filed and are not now being deprived of property without an opportunity for a hearing by virtue of an act of the Prothonotary. There also is no allegation or contention that plaintiffs face a real and immediate threat of such a deprivation at the hands of the Prothonotary. *Compare North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 604–05, 95 S.Ct. 719, 721–22, 42 L.Ed.2d 751 (1975) (funds frozen under writ of garnishment); *Mitchell v. W.T. Grant Company,* 416 U.S. 600, 602–03, 94 S.Ct. 1895, 1897–98, 40

L.Ed.2d 406 (1974) (goods held under writ of sequestration); *Fuentes v. Shevin,* 407 U.S. 67, 71, 92 S.Ct. 1983, 1989, 32 L.Ed.2d 556 (1972) (goods seized and held under writ of replevin); *Swarb v. Lennox,* 405 U.S. 191, 196, 92 S.Ct. 767, 770, 31 L.Ed.2d 138 (1972) (each plaintiff faced immediate judicial sale of homes and possessions); *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 338, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969) (plaintiff's wages being garnished).

This also is not a case where plaintiffs have demonstrated, or even claimed, that they have a reasonable expectation that they will be subject to a recurrence of the action they challenge. *Finberg v. Sullivan,* 634 F.2d 50, 55–56 (3d Cir.1980). Unlike Mrs. Finberg, plaintiffs are not persons of modest means with a demonstrated inability to meet their credit obligations. Unlike Mrs. Finberg, plaintiffs are not subject to a judgment the validity of which is uncontested and which could be executed at any moment. Rather, plaintiffs' counsel candidly acknowledged at oral argument that plaintiffs are not parties to any current agreement with a provision for confession of judgment and are not subject to any such judgment upon which a writ of execution might issue without a prior adjudication.

Plaintiff corporation may ultimately have the open judgment in this case enforced against them, but only after a hearing on the merits of the underlying claim in the state court. Indeed, in their supplemental brief in response to defendant Pettit's belated request for *Younger* abstention, plaintiffs argue that the state action does not provide an opportunity to litigate their federal due process claim because when this case was initiated "the state litigation was in a posture which precluded determination of the constitutional claim." This, say plaintiffs, is because the garnishment had been set aside and plaintiffs' substitute security released. In so arguing for abstention purposes, plaintiffs acknowledge that there is no justiciable controversy between themselves and the Prothonotary as to their injunctive and declaratory judgment count.

Moreover, if there were a justiciable controversy, the court would be bound to abstain from litigating it by *Schall v. Joyce,* 885 F.2d 101 (3d Cir.1989). There are distinctions between *Schall* and the instant case. Plaintiffs here do not seek money damages from defendant Pettit and do not ask the court to compel him to mark satisfied the judgment entered against them. In both cases, however, parties against whom confessed judgments were entered in state courts sought to challenge in a federal forum the manner in which the state enforces such judgments. *Schall,* 885 F.2d at 109.

Plaintiffs have asked the court to declare unconstitutional the entry of judgment against plaintiff corporation without a prior review and determination of legal propriety by a judge or quasi-judicial officer, and the issuance of a writ of execution to secure that judgment without notice or an opportunity for a hearing. It is difficult to perceive how the court could do that at this juncture without substantially affecting "the special interest that a state has in enforcing the orders and judgments of its courts." *Id.*

Accordingly, plaintiffs' cause of action against the Prothonotary will be dismissed.

The court, however, must address the constitutionality of the challenged procedures to assess the viability of plaintiffs' § 1983 claim against the individual defendants. It will do so in the following section.

### V. *Plaintiffs' § 1983 Claim Against the Bermans*

Plaintiffs allege that in obtaining the confessed judgment and garnishing their corporate bank account, these defendants deprived them of property without due process of law. Plaintiffs seek compensatory and punitive damages, including $2,900 in legal fees paid by them in their effort to open the judgment and remove the garnishment, pursuant to 42 U.S.C. § 1983.

Defendant Myron Berman and counsel, as agents for H.P., obtained the confessed judgment in conformity with state procedures in effect then and now. *See* Pa.R. Civ.P. 2951(b) and 2955. A praecipe was filed with the Prothonotary. A complaint averring the occurrence of a default and a computation of the amount due was filed. A copy of the instrument containing a warrant of attorney and an affidavit verifying that confession of judgment was appropriate in this case were filed.

In entering the confessed judgment, the Prothonotary acted in conformity with state procedures. *See* Pa.R.Civ.P. 2956. In issuing, almost immediately thereafter, the writ of execution pursuant to which plaintiffs' bank account was garnished, the Prothonotary acted in conformity with state procedures. *See* Pa.R.Civ.P. 2958. Under these procedures, the debtor is not notified and receives no opportunity to be heard prior to the issuance of the writ and its service on the garnishee.

Plaintiffs allege that these procedures are constitutionally deficient and that by utilizing them in this case, defendants violated plaintiffs' due process rights as secured by the Fourteenth Amendment. To sustain a § 1983 claim, a plaintiff must show that he was deprived of a federally secured right by a defendant acting under color of state law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Cohen v. City of Philadelphia,* 736 F.2d 81, 83 (3d Cir.1984), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984).

Plaintiffs, although only temporarily denied use of their funds, were deprived of property within the purview of the Fourteenth Amendment.[7] *North Georgia Fin-*

---

7. Plaintiffs also appear to allege that they were embarrassed and suffered reputational injury when the six items drawn on their garnished account were returned unpaid. There is no liberty or property interest in one's reputation and, unless accompanied by a tangible loss, reputational injury inflicted by the State is not actionable under § 1983. *See Paul v. Davis,* 424

U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976); *Setliff v. Memorial Hospital of Sheridan County,* 850 F.2d 1384, 1386 (10th Cir.1988); *Thomas v. Kippermann,* 846 F.2d 1009, 1010 (5th Cir.1988); *Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986); *Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3d Cir.1984); *Underwood v. Pritchard,* 638 F.2d 60, 62 (8th Cir.

*ishing Inc. v. Di–Chem, Inc.,* 419 U.S. at 606, 95 S.Ct. at 722. The abuse or misuse of a state procedure by a private party to effect such a deprivation is not action attributable to the State. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982); *Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532, 538 (E.D.Pa. 1982). When invoking the aid of state officials in utilizing constitutionally infirm, albeit presumptively valid, state procedures, however, a private individual does act under color of state law for purposes of the Fourteenth Amendment. *Lugar,* 457 U.S. at 933, 102 S.Ct. at 2751.[8] *See also Harris v. Roseburg,* 664 F.2d 1121, 1127 (9th Cir. 1981). Thus, to the extent that plaintiffs adequately state a challenge to the constitutionality of the pertinent Pennsylvania procedures generally, they have stated a § 1983 claim against these individual defendants.

In challenging the constitutionality of the Commonwealth's procedures for obtaining a confessed judgment, plaintiffs have failed to state a cognizable claim. Plaintiffs' sole contention in this regard appears to be that the failure to provide a prior judicial or quasi-judicial determination that entry of judgment is warranted creates a constitutionally unacceptable risk of mistakes. As is clear from Part I of its opinion in *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), the Supreme Court was well aware of the absence of prior judicial review and the ministerial role of the prothonotaries in the confession of judgment procedure when it rejected a per se due process challenge to that procedure.

The Pennsylvania procedure provides for immediate postjudgment notice to the debtor and an opportunity to open or strike the judgment. *See* Pa.R.Civ.P. 236 and 2959.

If the judgment debtor presents evidence of a defense sufficient to withstand a motion for a directed verdict, the court must open the confessed judgment. *See* Pa.R. Civ.P. 2959(e); *Frankford Trust Co. v. Stainless Steel Services, Inc.,* 327 Pa.Super. 159, 475 A.2d 147 (1984); *Lincoln Bank v. Kelly,* 282 Pa.Super. 261, 422 A.2d 1106 (1980). If a defect in the judgment appears on the face of the record, it will be stricken. *See West Chester Plaza Associates v. Chester Engineers,* 319 Pa.Super. 196, 201, 465 A.2d 1297 (1983). Plaintiffs in this case acknowledge that they were immediately notified by mail of the entry of judgment and that they promptly obtained an order opening the judgment.

The Court in *Swarb* specifically noted that a writ of execution on a confessed judgment may be secured immediately following entry of the judgment. *Swarb,* 405 U.S. at 195, 92 S.Ct. at 769. Thus, the Court arguably held by implication that the failure to ensure a pre-execution judicial determination of the debtor's knowing and voluntary waiver of rights does not offend due process standards. In view of subsequent Supreme Court cases focusing expressly on due process requirements in the garnishment and attachment context, however, the court is reluctant to so read the opinion in *Swarb.*

A person is Constitutionally entitled to a hearing before he is permanently deprived of property. *Mitchell,* 416 U.S. at 611, 94 S.Ct. at 1902. In devising prejudgment garnishment and attachment procedures, a state may consider and weigh the interests of creditors as well as debtors. *Id.* at 604–5, 94 S.Ct. at 1898–99; *Jonnet v. Dollar Savings Bank of the City of New York,* 530 F.2d 1123, 1129 n. 13 (3d Cir. 1976). A procedure which reflects a reasonable accommodation of these respective interests generally will satisfy the require-

---

1981); *Walker v. Cahalan,* 542 F.2d 681, 683 (6th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1647, 52 L.Ed.2d 357 (1977); *Balliet v. Whitmire,* 626 F.Supp. 219, 224–25 (M.D.Pa.), *aff'd,* 800 F.2d 1130 (3d Cir.1986); *Chaudhry v. Prince George's County,* 626 F.Supp. 448, 454 (D.Md. 1985).

**8.** The seemingly harsh consequences of this holding for an unwary citizen utilizing in good faith an apparently valid state procedure later held to be unconstitutional may be mitigated by the availability of a qualified immunity defense. *See Lugar,* 457 U.S. at 941 n. 23, 102 S.Ct. at 2755 n. 23.

ments of due process. *Hines v. Pettit*, 638 F.Supp. 1269 (E.D.Pa.1986). Inherent in such a procedure is the existence of safeguards against mistaken seizures. *See Di–Chem*, 419 U.S. at 608, 95 S.Ct. at 723; *Jonnet*, 530 F.2d at 1126. How much leeway for an initial mistake can be tolerated reasonably may depend upon the nature and severity of the consequences of a mistake.

Due process allows for a prejudgment attachment based on sworn ex parte documents containing the basis for the creditor's claim. *Mitchell*, 416 U.S. at 609, 94 S.Ct. at 1901. To comport with due process, however, any prejudgment attachment procedure must provide an opportunity for a prompt postseizure hearing at which the propriety of the attachment can be tested. *Di–Chem*, 419 U.S. at 607, 95 S.Ct. at 722; *Mitchell, supra; Jonnet*, 530 F.2d at 1129.

■ A creditor's interest in securing a postjudgment attachment would appear to be substantially greater than his interest in obtaining a prejudgment attachment. The prejudgment creditor is interested in freezing the debtor's assets so that they cannot be dissipated pending the adjudication of a claim on which the creditor may prevail. The postjudgment creditor has a choate interest and is seeking to secure assets to satisfy a judgment that has been entered in his favor. The Fifth Circuit has stated that this difference "sharply distinguishes prejudgment from postjudgment garnishment cases," and has characterized as "patently weightier" the interest of the postjudgment creditor. *Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1366 (5th Cir.1976).

The Third Circuit, however, has stated clearly that the due process standards found by the Supreme Court to be applicable in cases of prejudgment attachment "govern" and "control" the issue of due process in the context of postjudgment seizures as well. *Finberg v. Sullivan*, 634 F.2d at 57–8. In *Finberg* the defendant acknowledged her liability on the claim on which a default judgment had been entered against her. The court cannot reasonably employ any lesser standard of due process

to a garnishment executed pursuant to a confessed judgment the basis of which is contested.

■ The availability and cost of credit can be affected by the ease and expense of collection when a debtor defaults on his obligations. Thus, consumers generally as well as creditors arguably have an interest in maintaining a system in which confessed judgments can be obtained and efficiently enforced. Nevertheless, a procedure which permits the attachment of a debtor's property without an opportunity to be heard as to the voluntariness of the waiver of prejudgment adjudication, let alone the underlying merits of the creditor's claim, must at least comport with the due process requirements found to be applicable in cases involving judicially-awarded judgments.

■ The Court in *Finberg* stressed the severe consequences of freezing an individual's bank account. It is clear, however, that the garnishment of a corporate bank account implicates similar due process considerations. *See Di–Chem*, 419 U.S. at 608, 95 S.Ct. at 723. Moreover, the freezing of the bank account of a small business such as plaintiffs' can have many of the same consequences that flow from the seizure of an individual account.

■ A reading of *Di–Chem, Mitchell, Finberg* and *Jonnet* makes clear that to comport with due process a garnishment or attachment procedure must have at least three features. First, to obtain a writ of garnishment or attachment the creditor must present a sworn document setting forth in non-conclusory terms the basis for his claim. Second, the issuance of the writ should be conditioned on a review and an approval by an official invested with the requisite discretion. Judicial review and approval are not required, however, the reviewing official must possess sufficient competence adequately to determine whether the conditions justifying an attachment have been met. *See Finberg*, 634 F.2d at 62; *Jonnet*, 530 F.2d at 1130; *Hines*, 638 F.Supp. at 1270. Finally, there must be an opportunity for a prompt postseizure hearing at which the creditor must

demonstrate at least the probable validity of his claim. *See Di–Chem,* 419 U.S. at 607, 95 S.Ct. at 722; *Jonnet, supra.*

As noted above, in Pennsylvania a creditor may obtain a confessed judgment and accompanying writ of execution only upon a sworn document setting forth the basis of his claim, and this was done in the instant case. It is uncontested that in entering judgment and issuing a writ of execution, the prothonotary acts in a ministerial capacity. *See Swarb,* 405 U.S. at 195, 92 S.Ct. at 769. Under the Pennsylvania procedure, as noted above, the debtor may move promptly to open the judgment on which the writ was issued. There is no assurance, however, of a prompt hearing on the merits of the creditor's claim and the attachment is preserved while any proceedings to open a judgment are pending. *See* Pa.R.Civ.P. 2959(f). Execution may proceed even where the underlying judgment has been opened. *Continental Bank v. Frank,* 343 Pa.Super. 477, 485, 495 A.2d 565 (1985).

■ Because the Pennsylvania garnishment procedure in question does not provide for a discretionary review and approval by a professionally competent official, and because it does not guarantee a prompt postseizure adjudication of a debtor's protest, the procedure fails to comport with due process of law.[9]

■ Where a judgment debtor in fact has been able to vindicate his interests expeditiously despite the absence of an express provision ensuring that he can do so, he is not deprived of due process. *See Brown,* 539 F.2d at 1368. In the instant case, plaintiffs in fact promptly resecured the use of their property.

■ What is less clear is whether an appropriate review prior to the issuance of the writ could have spared plaintiffs from their ordeal altogether. It appears, for example, that a well versed official might have determined that the placement of the

cognovit clause in the lease agreement and the absence of its express incorporation in the renewal agreement on which the judgment and writ were based were fatal to defendants' claim of right. *See Scott v. 1523 Walnut Corporation,* 301 Pa.Super. 248, 255–57, 447 A.2d 951 (1982). In short, plaintiffs may be able to demonstrate that they would not have been deprived of the use of their property and would not have incurred certain expenses associated therewith if Pennsylvania had provided for a discretionary review by an appropriate official.

Accordingly, defendants' motion to dismiss the § 1983 claim will be denied.

## VI. *Plaintiffs' State Law Claims*

Plaintiffs also allege malicious use of process, abuse of process and fraud by the Bermans. Plaintiffs contend that defendants maliciously used and abused process by filing a complaint in confession of judgment against them without a proper basis for doing so.

■ "Malicious use of process is the initiation of legal proceedings with malice and without probable cause, which proceedings terminate favorably to the party against whom they were initiated." *Chicarelli,* 551 F.Supp. at 541. *See also Junod v. Bader,* 312 Pa.Super. 92, 458 A.2d 251 (1983). In the instant case, defendants' claim against plaintiffs is pending in the Philadelphia Common Pleas Court and the proceedings on this claim have not been terminated in favor of plaintiffs or any other party.

■ "Abuse of process is the initiation of process for an unlawful purpose, that is, a purpose other than that which the process is intended by the law to effect." *Chicarelli, supra* at 542. The essence of the tort is the improper use of process *after* it has been issued. *Id. See also Triester v. 191 Tenants Association,* 272 Pa.Super. 271, 279, 415 A.2d 698 (1979). While plaintiffs allege that defendants

---

9. The court does not mean to suggest that the prothonotaries lack the professional competence to undertake this task. If given the discretion, and perhaps some additional specialized training, there is no reason to assume that the prothonotaries could not conduct an appropriate review process.

caused process to issue without cause, they do not allege that defendants thereafter sought to use that process for a purpose other than that which the law provides. A party who carries out process to its authorized conclusion, even though his intentions are bad, has not abused process. *Shaffer v. Stewart,* 326 Pa.Super. 135, 139, 473 A.2d 1017 (1984) (initiation of action to extract unwarranted settlement of unrelated claim is malicious use of process but not abuse of process).

Accordingly, defendants' motion to dismiss Counts III and V of plaintiff's complaint will be granted.

Plaintiffs allege that by charging them additional rent for proportional cost increases under the extension agreement after failing to exercise the right to do so under the initial lease term, defendants misled and defrauded them. Plaintiffs also allege that defendants' failure to advise them at the time the lease extension was being negotiated that defendants interpreted the renewal agreement to incorporate the proportional rent increase provision of the lease constituted fraud.

In declining to exercise their right to charge additional rent for increased costs over a period of time, defendants may have waived their right to collect such charges thereafter. A person can sleep on his rights creating an impression that he will continue to do so without committing fraud upon awakening and seeking to exercise those rights.

Both parties to the lease extension agreement were represented by counsel. There is no allegation that either party prevented the other from stating his interpretation of the contract terms or asking the other what his interpretation was. There is no allegation that defendants or their lawyer made any statement calculated to mislead plaintiffs about their perception of the incorporation of the proportional rent increase provision. Plaintiffs have failed adequately to allege fraud in Count IV.

If defendants billed plaintiffs for rent defendants knew was not owed to mislead them into paying the sums billed, this may be fraud. Plaintiffs, however, have not made such an allegation. Indeed, taken together, allegations 86 and 87 make clear that plaintiffs do not allege that defendants knew they had no right to enforce Article I of the lease. Rather, the gist of plaintiffs' claim is that defendants failed to articulate their view that the terms of the lease were automatically preserved and incorporated into the lease extension.

Accordingly, Counts III and V will be dismissed and Count IV will be dismissed without prejudice to replead with the requisite specificity a cause of action for fraud if such can be done.

### ORDER

AND NOW, this 22nd day of February, 1991, upon consideration of defendant Pettit's Motion to Dismiss and plaintiffs' response thereto, and following oral argument thereon, IT IS HEREBY ORDERED that said Motion is GRANTED and the cause of action set forth against this defendant in Count I of plaintiffs' complaint is DISMISSED.