Joe J. JORDAN; James E. Mitchell;
Jordan Mitchell, Inc.,
Appellants,

v.

FOX, ROTHSCHILD, O'BRIEN
& FRANKEL, Appellee.

Joe J. JORDAN; James E. Mitchell; Jordan Mitchell, Inc., on their own behalf and on behalf of all others similarly situated

v.

Arnold T. BERMAN; Myron J. Berman; John J. Petit, Jr., Prothonotary of the Court of Common Pleas of Philadelphia County,

Joe J. Jordan; James E. Mitchell;
Jordan Mitchell, Inc., Appellants at
No. 92–1424,

Arnold T. Berman and Myron J. Berman,
Appellants at No. 92–1456.

Nos. 92–1435, 92–1424 and 92–1456.

United States Court of Appeals,
Third Circuit.

Argued Jan. 7, 1993.

Decided March 31, 1994.

As Amended April 18, 1994.

Sharon K. Wallis, (argued), Philadelphia, PA, for Joe J. Jordan, James E. Mitchell and Jordan Mitchell, Inc.

Steven R. Waxman, (argued), Leslie M. Gerstein, Barry G. Obod, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Fox, Rothschild, O'Brien & Frankel.

Jacob C. Cohn and Jerome J. Shestack, (argued), Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for Arnold T. Berman and Myron J. Berman.

Before HUTCHINSON and SCIRICA, Circuit Judges, and STANDISH, District Judge.*

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I. *Introduction*

These three appeals all arise out of a dispute over a commercial lease ("Lease") between Arnold T. and Myron J. Berman t/a H.P. Realty ("Bermans" or "Landlord"), commercial landlords who rent office space in Philadelphia, and one of their tenants, Jordan Mitchell, Inc. (sometimes the "Tenant"), an architectural firm. In the course of that dispute, the Bermans' attorneys invoked a confession of judgment clause in a form lease executed by the Tenant's predecessor causing the Prothonotary of the Philadelphia Court of Common Pleas to enter judgment against the Tenant for rents the Bermans claim Jordan Mitchell, Inc. owes. On the judgment, the Sheriff of Philadelphia garnished Jordan Mitchell, Inc.'s checking account without prior notice or hearing.

Jordan Mitchell, Inc. ultimately succeeded in opening the judgment, but the underlying dispute over the rent they owe is still pending in the state court. In the meantime, Jordan Mitchell, Inc. and its stockholders also filed a civil action in the United States District Court for the Eastern District of Pennsylvania. In it, they claimed Pennsylvania's practice on the entry of judgments by confession and the practice of execution on them without prior notice or hearing is actionable under 42 U.S.C.A. § 1983 (West 1981) because it violates the Fourteenth Amendment's requirement of procedural due process. They also claimed that other acts the Bermans had taken against Jordan Mitchell, Inc. and other tenants who rented from them violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961–1968 (West 1984 & Supp. 1993).

While the federal action against the Bermans was still pending, Jordan Mitchell, Inc. and its stockholders filed a separate section 1983 action against the Bermans' attorneys, the law firm of Fox, Rothschild, O'Brien & Frankel ("Fox Rothschild" or "Attorneys"). The district court dismissed both actions after holding Pennsylvania's procedure for execution on confessed judgments does violate due process but that the Bermans and the Attorneys were entitled to qualified immunity as a matter of law.

* Hon. William L. Standish, District Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

Preliminarily, in *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 787 F.Supp. 471, 482 (E.D.Pa.1992) (*"Fox Rothschild I"*), the district court had held the individual stockholders lacked standing to assert their claims because they had not alleged or shown any injury independent of the corporation. It also denied the stockholders' motion to amend their complaint to allege facts tending to show that the shareholders had become the real parties in interest on their corporation's claims under the terms of the sale of the corporation or its assets.[1]

Specifically, Jordan Mitchell, Inc. and its stockholders appeal an order of the district court granting the Bermans' Rule 56 motion for summary judgment. In the action against the Attorneys, Jordan Mitchell, Inc. and its stockholders appeal an order granting Fox Rothschild's Rule 12(b)(6) motion.

At Docket No. 92–1435, Jordan Mitchell, Inc. and its stockholders appeal the order dismissing their action against the Attorneys, the order that denied the stockholders' independent standing and the order denying the stockholders' motion for leave to amend. Jordan Mitchell, Inc. and the stockholders also appeal the orders dismissing their action against the Bermans at our Docket No. 92–1424. Finally, the Bermans have filed a cross-appeal from the district court's order denying their Rule 11 and Rule 26 motion for sanctions at our Docket No. 92–1456.

While all these appeals were pending, the Supreme Court held in *Wyatt v. Cole,* —— U.S. ——, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), that private persons acting under color of law were not entitled to qualified immunity. Consequently, we must vacate the district court's orders dismissing the section 1983 claims against the Bermans and their Attorneys and remand the case for further proceedings.

Though the scope of review is somewhat different in each case and, on remand, development of the underlying facts concerning the open issues of waiver and good faith may vary as between the Landlord and the Attorneys, all three appeals present the same important legal issues: (1) whether a private person becomes a state actor when he causes a court's filing officer to enter a judgment by confession; (2) whether entry of a judgment by confession and execution on it makes the private persons who cause both state actors; (3) whether entry of a judgment by confession violates due process or instead no violation occurs until there is a seizure or detention of the debtor's property without pre-deprivation notice or hearing; (4) what standards govern waiver of a person's due process right to pre-deprivation notice and hearing; (5) whether a private party who acts under color of law to deprive a person of a constitutional right can assert in defense good faith reliance on a longstanding, widespread practice or procedure previously used without objection on constitutional grounds; and (6) if so, what are the standards by which good faith should be judged.[2]

Despite the potential distinctions that may arise in applying the waiver concept to the Bermans as opposed to their Attorneys, the difference in the procedural posture of each case and its effect on the scope of review, we

---

1. The district court did not formally dispose of the stockholders' individual claims in the action against the Bermans. We will assume it would have used the same rationale and reached the same result in that case as it did in *Fox Rothschild I.*

2. We think four other issues can be disposed of summarily. Two are common to both cases but two others arise only in the case against the Bermans. One common issue concerns the district court's order dismissing the common law fraud claims Jordan Mitchell, Inc. and its stockholders asserted against both the Bermans and their Attorneys for lack of supplemental jurisdiction. *See* 28 U.S.C.A. § 1367 (West 1993). That order will be vacated pending reconsideration of the due process claims on remand. The second common issue concerns the district court's order dismissing on the merits the Tenant's common law claims for malicious use of process and malicious abuse of process against the Bermans and their Attorneys. That order will be affirmed.

An issue peculiar to the case against the Bermans is the district court's order granting the Bermans summary judgment on the RICO claim against them for failure to show relatedness and continuity. We will affirm that order essentially for the reasons given by the district court. *See Jordan v. Berman,* 792 F.Supp. 380, 384–88 (E.D.Pa.1992) (*"Berman II"*). Finally, we hold the Bermans' cross-appeal from the denial of sanctions lacks merit and so we will affirm the district court's order denying that motion.

think these common issues make it judicially efficient and convenient to consider all three appeals in this one opinion.

Before a detailed recitation of the events that led to these appeals or a full analysis of these legal issues a summary of the case is helpful. Thereafter, we will set out its facts in more detail and add a full description of Pennsylvania practice on judgment by confession. That will be followed by a procedural history, a short statement of the bases for federal jurisdiction over these cases and a discussion of the scope of our appellate review. Thereafter, we will analyze the Fourteenth Amendment's requirement of state action and section 1983's restriction to persons who act under color of law. We will then discuss, in order, the constitutionality of Pennsylvania's procedure on confession of judgments both on entry and execution; waiver; the availability and limits of a private person's good faith defense, as opposed to the qualified immunity only a public official can assert; the stockholders' independent standing to seek damages for the acts of the Bermans and their Attorneys; and finally the district court's refusal of the stockholders' motion for leave to amend to assert their standing as real parties in interest, as successors to the right of their corporation, Jordan Mitchell, Inc., or as obligors on responsibilities they undertook in connection with its sale.

## II. *Initial Summary*

Fox Rothschild acted under a warrant to confess judgment in a printed form of lease for commercial office space between the Bermans and a corporation called Joseph J. Jordan, FAIA, P.C. That corporation was owned by one of the two stockholders of Jordan Mitchell, Inc. We assume Fox Rothschild acted on instructions from the Bermans. Before the judgment by confession was entered Jordan Mitchell, Inc. executed an amendment to the Lease ("Amendment") after consulting counsel about a dispute on its right to hold over under the Lease signed by its predecessor, Joseph J. Jordan, FAIA, P.C. The Amendment extended the Lease's term and incorporated its terms by reference, but the only document

that contained the text of the warrant on which judgment was confessed was the original form Lease signed by Jordan Mitchell's predecessor, Joseph J. Jordan, FAIA, P.C. Following execution of the Amendment, a new dispute arose. It concerned the Bermans' claim that additional rent was due under a rent escalator clause in a rider to the original form Lease. In the course of this second dispute, the Bermans asked Fox Rothschild to confess judgment for rent in arrears.

When Fox Rothschild confessed judgment against Jordan Mitchell, Inc., they took action that caused the Sheriff of Philadelphia to execute on the judgment by garnishing Jordan Mitchell, Inc.'s bank account. The sheriff, following routine Pennsylvania practice, acted without prior notice or hearing for Jordan Mitchell, Inc. or any of its agents, employees or stockholders. We again assume the Attorneys acted under instructions from the Bermans when they set the garnishment process in motion.

On these facts we conclude that entry of the confessed judgment did not involve state action with consequences significant enough to make the Bermans and Fox Rothschild state actors, but we think their use of the sheriff to enforce the judgment make them persons acting under color of law. We then conclude, as did the district court, that entry of the judgment, when coupled with seizure of the corporation's bank account, without prior notice or opportunity to be heard, does violate the Due Process Clause of the Fourteenth Amendment to the Constitution.

After the district court dismissed the Tenant's actions on the basis of qualified immunity, the Supreme Court decided in *Wyatt* that qualified immunity is not available to private persons who become state actors for purposes of section 1983. Whether private persons who act under color of law may raise a defense of good faith was left open. Accordingly, the district court's orders dismissing Jordan Mitchell, Inc.'s claims must be vacated.

Because it relied on qualified immunity to support dismissal, the district court did not speak clearly as to whether Jordan Mitchell, Inc. had waived its constitutional right to due

process. The waiver issue is likely to recur on remand. After considering the decision of the Supreme Court in *D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) (debtor may waive the right to notice and hearing before a deprivation of property if the debtor freely and intelligently signs a document that authorizes judgment by confession), we believe that Jordan Mitchell, Inc.'s section 1983 claims against the Attorneys cannot be dismissed on a Rule 12(b)(6) motion because the complaint does not show on its face that the corporation waived its constitutional right to pre-deprivation hearing and notice. In the Bermans' case, again in consideration of *Overmyer*, we conclude that there remain genuinely disputed issues of material fact concerning waiver. We note that the district court on remand will have to consider whether the Bermans and their Attorneys can successfully assert a good faith defense and that issue is also likely to require the resolution of factual disputes. Finally, we note that the district court on remand may have to reconsider its orders dismissing the stockholders' claims for lack of standing.

### III. *Statement of Facts*

On July 8, 1981, Jordan, acting on behalf of Joe J. Jordan, FAIA, P.C., a Pennsylvania corporation, executed a standard, preprinted "Form 60" lease for the fifth floor of an office building located at 1920 Chestnut Street in Philadelphia. Arnold Berman, trading as H.P. Realty ("H.P."), signed as landlord. The Lease was to commence September 1, 1981 and end August 1, 1986. Neither party was represented by counsel when it was signed.

On October 1, 1981, Mitchell and Jordan joined in the practice of architecture and formed Jordan Mitchell, Inc. It conducted its business out of the same Chestnut Street property Joe J. Jordan, FAIA, P.C. had leased from H.P.

By its terms, the Lease was to automatically renew for an additional one-year term on May 2, 1986 absent notice of non-renewal. The additional term would have commenced August 1, 1986, on expiration of the original term. On May 16, 1986 H.P. delivered a termination notice dated April 30, 1986 to Jordan Mitchell, Inc. Jordan Mitchell, Inc. retained counsel who advised H.P. that the Lease had already automatically renewed. Myron Berman then told Jordan he would "retaliate" if the leased premises were occupied after the end of the original term. Jordan Mitchell, Inc. refused to leave.

Thereafter, according to Jordan Mitchell, Inc., unnamed individuals acting on instructions from Myron Berman disconnected electrical wiring in Jordan Mitchell, Inc.'s offices on May 22, 1986 and obstructed the office entrance with garbage on May 23, 1986.

Despite these problems the parties were able to negotiate, through counsel, an Amendment extending the Lease's term. The Amendment formally substituted Jordan Mitchell, Inc. for Joe J. Jordan, FAIA, P.C. as tenant and extended the Lease's term for three years beginning August 1, 1986. In the Amendment the parties mutually released each other from all claims arising under the original Lease.

Paragraph 8 of the Amendment states: "Except as herein specifically set forth, the Lease remains in full force between the parties without default on the part of either of them." Appendix ("App.") at 143. Jordan Mitchell, Inc. executed the Amendment on October 29, 1986. H.P. did so on behalf of the Bermans on December 8, 1986.

The original form Lease between the Bermans and Joe J. Jordan, FAIA, P.C. was four pages long, printed front and back and signed at the end of the fourth page. The warrant of attorney to confess judgment, paragraph 11(e), was printed on the front of the third page of the printed form. It states:

> If the rent, fixed and/or additional, shall remain unpaid on any day when the same ought to be paid, Lessee hereby empowers any attorney of the Court of Common Pleas of _____ County, Commonwealth of Pennsylvania, or any other Court there or elsewhere to appear as attorney for Lessee in any and all actions which may be brought for said arrears of rent, fixed and/or additional, and to sign for Lessee an agreement for entering in any competent Court, an amicable action or actions to

confess judgment against Lessee for the recovery of all arrears of rent, fixed and/or additional, as aforesaid, and for interest and costs, together with an attorney's commission of 5%. Such authority shall not be exhausted by one exercise thereof, but may be exercised from time to time as often as any of said rent, fixed or additional, shall fall due or be in arrears; ...

App. at 136. There is nothing in the record in Jordan Mitchell's case against the Bermans to show that paragraph 11(e) was specifically discussed either originally or during the negotiations over the Amendment, or that Joe J. Jordan, FAIA, P.C. had counsel when it signed the Lease form. Not surprisingly, there is likewise no reference to any such specific discussions in the complaint against Fox Rothschild, and the Amendment does not set forth paragraph 11(e)'s text or expressly refer to any power to confess judgment.

The original Lease contained a Rider that is material to these cases.[3] The Rider granted H.P. the option of charging Joe J. Jordan, FAIA, P.C. additional rent in an amount equal to the lessee's proportionate share of any increases in taxes or operating expenses. The Rider required notice from the Landlord to the Tenant before the rent could be increased. Neither H.P. nor the Bermans ever gave any notice of their intention to increase the rent during the original term of the Lease. The record does not show that the parties discussed the rent escalator during the negotiations which led to the Amendment.

The application of this rent escalator to the Amendment reignited the dispute between the Bermans and Jordan Mitchell, Inc.

Paragraph 3 of the Amendment referenced an appended table setting forth the annual rent due. It states: "As rent for the lease premises during the extended term of the Lease, Lessee shall pay the annual amounts as set forth in the following Table...." App. at 141–42. The Bermans contended that the rents in the table were minimum annual rentals which could be retroactively increased under Article 1 of the Rider to the original Lease.

After the parties executed the Amendment, H.P. and the Bermans tried to use the escalator clause found in the Rider to increase the rent, not just prospectively for rent that would become due in the extended term, but also retroactively for rent that had become due in the original term. H.P. sent Jordan Mitchell, Inc. a bill for $1,416.20 on February 10, 1988. H.P. said this represented Jordan Mitchell, Inc.'s proportional amount of local real estate tax increases for the years 1982 through 1988. Jordan Mitchell, Inc. paid this bill but now says it did so mistakenly. Jordan Mitchell, Inc. has since refused to pay the Bermans or H.P. any more of the rent H.P. claims is due under the escalator.

On October 13, 1988, H.P. sent Jordan Mitchell, Inc. a bill for increased operating expenses, also in apparent reliance on the rent escalator. When Jordan Mitchell, Inc. did not pay, Myron Berman asked Philadelphia Gas Works ("PGW") to cut off the gas to the leased premises. Jordan Mitchell, Inc. avoided termination of service by arranging for direct billing.[4]

On March 7, 1989, H.P. offered to waive its October 13, 1988 claim for additional rent if Jordan Mitchell, Inc. would sign a new three-

---

**3.** Article 1 of the Rider stated:

Lessee further agrees to pay as rent in addition to the minimum annual rental herein a sum equal to Lessee's proportionate share of any increase in real estate taxes assessed against or imposed upon the larger premises of which the demised premises are a part over the real estate taxes assessed against or imposed upon said larger premises for the year 1981 plus a sum equal to the Lessee's proportionate share of any increase in the cost of the operation and maintenance of the larger premises of which the demised premises are a part over such cost for the year 1981....

App. at 138.

**4.** Jordan Mitchell, Inc. and its stockholders allege that the Bermans treated other tenants similarly. They give as an example the experience of Diversified Community Services ("DCS"), a tenant in another building under the Bermans' control. After DCS refused to pay a bill for increased back rent that H.P. had sent it on December 7, 1987, DCS tried to move out. The Bermans blocked DCS from using the service elevators. DCS filed suit against the Bermans but was not able to move out until that suit was settled.

year lease. Jordan Mitchell, Inc. refused. The Bermans then directed Fox Rothschild to obtain and execute on a judgment for the rent claimed unpaid.

On May 16, 1989, Martha Chovanes, Esq. ("Chovanes"), a Fox Rothschild attorney, filed a complaint in confession of judgment against Jordan Mitchell, Inc. in the office of the Prothonotary of the Court of Common Pleas of Philadelphia in which the Bermans and H.P. were named as plaintiffs.[5] Simultaneously Chovanes filed a praecipe asking the Prothonotary to enter judgment and issue a writ of execution to the Sheriff. In their action in confession, the Bermans claimed $41,082.62 for rent in arrears plus related charges, less credit for a security deposit. Myron Berman, in his capacity as "managing agent" of H.P., executed the affidavit of default Pennsylvania law requires. Another Fox Rothschild attorney, Paul J. Brenman, Esq. ("Brenman"), entered his appearance for Jordan Mitchell, Inc., and confessed judgment on its behalf. The Prothonotary entered judgment against Jordan Mitchell, Inc. and issued the writ of execution. It directed the sheriff to serve on Fidelity Bank ("Fidelity") an order garnishing Jordan Mitchell, Inc.'s checking account. The sheriff did so. The order required Fidelity to freeze the funds in Jordan Mitchell, Inc.'s checking account to whatever extent necessary to ensure payment of the judgment. As a result, Jordan Mitchell, Inc.'s account became overdrawn and six checks it had issued were returned unpaid.

Three days later, on May 19, 1989, Jordan Mitchell, Inc. received notice from Fidelity that its checking account had been garnished. With the notice Fidelity enclosed copies of the documents Fox Rothschild had filed in the court of common pleas. On May 24, 1989, Jordan Mitchell, Inc. filed a petition to open and/or strike the confessed judgment. The court of common pleas immediately issued a rule to show cause why the judgment should not be opened or stricken and vacated the attachment of Jordan Mitchell, Inc.'s checking account at Fidelity upon the deposit

of $10,000.00 cash into an escrow account. Later, on June 5, 1989, the Bermans agreed to release the escrow. Finally, on July 21, 1989, the court of common pleas granted Jordan Mitchell, Inc.'s petition to open the judgment and returned the funds in the escrow account but denied its motion to strike.

## IV. *Procedural History*

On November 17, 1989, Jordan Mitchell, Inc. and its stockholders filed a six-count complaint against the Bermans and John J. Pettit, Jr., Prothonotary of the Court of Common Pleas of Philadelphia (the "Prothonotary"). Count I requested a declaratory judgment declaring that Pennsylvania's Rules of Civil Procedure permitting immediate attachment of all bank accounts and other assets of a defendant who has suffered a confessed judgment violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Count II, based on 42 U.S.C.A. § 1983, sought damages from the Bermans for their attachment of Jordan Mitchell, Inc.'s bank account without due process of law. Counts III, IV and V alleged Pennsylvania common law claims of malicious use of process, fraud and malicious abuse of process. Count VI sought treble damages for violation of RICO.

On January 5, 1990, the Bermans filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. On January 25, 1990, the Prothonotary likewise filed a motion to dismiss or, in the alternative, for summary judgment.

On February 22, 1991, the district court granted the Prothonotary's motion to dismiss on the ground that the claims against him were moot.[6] *See Jordan v. Berman*, 758 F.Supp. 269, 275–77 (E.D.Pa.1991) ("*Berman I*"). The district court also held Pennsylvania's Rules of Civil Procedure authorizing the entry of judgment by confession are not unconstitutional; and, to the extent that Jordan Mitchell, Inc. and its stockholders relied on the state's procedure for entry of the judg-

---

**5.** For a description of Pennsylvania law governing confession of judgment and subsequent execution, see *infra* section VII.

**6.** For an analysis of that rationale, *see* footnotes 11 and 14, *infra*.

ment, they had "failed to state a cognizable claim" under section 1983. *Id.* at 278 (citing *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972)). The district court held, however, that Pennsylvania's post-judgment garnishment procedure did violate due process because it failed to provide for discretionary review and a prompt post-seizure hearing. *Id.* at 280.

The district court then decided there were outstanding issues of material fact that had to be resolved before the Bermans' Rule 12(b)(6) motion to dismiss [7] could be decided and so denied it at this point. The court noted, however, that private individuals could sometimes act under color of law if they invoked the power of the state to utilize an unconstitutional act. *Id.* at 278.

The district court also refused to dismiss the RICO claim of Jordan Mitchell, Inc. and its stockholders because "it cannot be determined beyond doubt at this time that, consistent with their allegations, [they] will be unable to prove that as a routine way of doing business, [the Bermans] attempted to coerce favorable lease extensions and payment of dubious charges from a number of tenants." *Id.* at 275. The court did dismiss the malicious use and abuse of process claims on their merits, but it dismissed the fraud claim without prejudice. *Id.* at 280–81.

On March 22, 1991, while discovery continued in the action against the Bermans, Jordan Mitchell, Inc. and its stockholders filed a separate action against Fox Rothschild. They alleged that Fox Rothschild, as attorneys for the Bermans, deprived Jordan Mitchell, Inc. and its stockholders of property without due process of law in violation of 42 U.S.C.A. § 1983 when they invoked the aid of state officials to enter a confessed judgment against Jordan Mitchell, Inc. and garnish its checking accounts.[8] On June 10, 1991, Fox Rothschild filed a Rule 12(b)(6) motion to dismiss this complaint. The mo-

tion asserted: (1) the stockholders did not have standing as individuals to assert a section 1983 claim; (2) Fox Rothschild's conduct was not actionable under section 1983 because there was no state action and Fox Rothschild did not act under color of law; and (3) Fox Rothschild was entitled to qualified immunity from liability.

On March 27, 1992, the district court granted Fox Rothschild's motion to dismiss. *See Fox Rothschild I,* 787 F.Supp. at 482. Holding preliminarily that the stockholders lacked standing because the bank account belonged to their corporation, Jordan Mitchell, Inc., and they had failed to establish any distinct individual injury, *id.* at 474–75, the court went on to conclude that the Attorneys' acts in invoking the state's post-judgment garnishment procedure involved state action for purposes of section 1983. *Id.* at 475–77 (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Consistent with its holding in *Berman I,* the district court then held the Attorneys' use of Pennsylvania's standard post-judgment procedure to execute on the judgment they had obtained by confession violated due process. *Id.* at 477–78 (citing *Berman I,* 758 F.Supp. at 280). Nevertheless, the district court granted the Attorneys' Rule 12(b)(6) motion to dismiss after concluding the Fox Rothschild attorneys, though private persons, were, like public officials acting under color of law, entitled to qualified immunity. *Id.* at 478–482. On qualified immunity, the court concluded the Attorneys reasonably believed their acts did not violate due process because of the unsettled and constantly evolving state of constitutional protection with regard to standard post-judgment procedures used to execute on confessed judgments. *Id.* at 482. The district court did not reach the waiver issue.

---

7. Ultimately, the district court treated this as a Rule 56 motion for summary judgment.

8. The complaint originally named three individual Fox Rothschild attorneys as defendants: the two who represented the Bermans in entering and executing on the confessed judgment, and a third who entered an appearance for the Tenant and confessed judgment on its behalf. By stipu-

lation, the parties agreed on August 2, 1991, to dismiss one of the defendant attorneys, and to substitute Fox Rothschild for the other two individual defendants. The stipulation allowed Fox Rothschild to assert only those defenses that were available to the individual defendants. *See Fox Rothschild I,* 787 F.Supp. at 473 n. 1.

On May 4, 1992 the district court denied Jordan Mitchell, Inc.'s and its stockholders' motion for reconsideration of the order dismissing their action against Fox Rothschild. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 792 F.Supp. 393 (E.D.Pa.1992) (*"Fox Rothschild II"*). In an accompanying opinion it again held that Jordan Mitchell, Inc. had no section 1983 claim against the Attorneys for their acts in entering a judgment by confession. It explained that confession of judgment clauses are not invalid or ineffective as a matter of law because mere confession of judgment does not involve the kind of state action that subjects private actors to liability under section 1983. *See id.* at 395–97. Only upon service of the writ of execution did Jordan Mitchell, Inc. suffer a state-aided deprivation. *Id.*

In the meantime, the Bermans had filed a renewed motion for summary judgment on the reserved question of whether they were liable to Jordan Mitchell, Inc. and its stockholders under section 1983. They raised the same legal question Fox Rothschild had posed on its Rule 12(b)(6) motion; namely, whether Pennsylvania's standard post-judgment procedure for execution on a judgment obtained by confession violates due process. In addition, the Bermans also sought summary judgment on the RICO claims and the pendent state fraud claim and requested Rule 11 sanctions.

On May 4, 1992, the district court granted summary judgment to the Bermans on Jordan Mitchell, Inc.'s section 1983 claims because the Bermans, like their Attorneys, were entitled to qualified immunity. *See Jordan v. Berman,* 792 F.Supp. 380, 388–93 (E.D.Pa.1992) (*"Berman II"*). The court dismissed the RICO claim holding Jordan Mitchell, Inc. had not shown the predicate acts needed to meet RICO's requirements of relatedness and continuity. *Id.* at 384–86. It again concluded that the stockholders had not shown the alleged predicate acts had caused it any injury. *Id.* at 385, 387–88. Finally, it refused to exercise supplemental jurisdiction over Jordan Mitchell, Inc.'s state law fraud claim after all the federal claims were dismissed. *Id.* at 393.[9] Jordan Mitchell, Inc. and its stockholders filed a timely notice of appeal in both the Berman action and the Fox Rothschild action on May 26, 1992.

### V. *Issues on Appeal*

On appeal, Jordan Mitchell, Inc. and its stockholders present five issues for review. We will discuss only three of them [10] beginning with the argument that the court erred in determining that entry of the judgment by confession did not involve state action under section 1983. We will then analyze their contention that the district court erred in dismissing their section 1983 claims for damages from both the Bermans and Fox Rothschild because Pennsylvania's procedure for

---

**9.** We note that the stockholders were parties in the Berman case, but the court's opinions in that case do not deal with their individual standing in that case.

**10.** We summarily dispose of the remaining two issues as follows:

(1) Jordan Mitchell, Inc.'s argument that the district court erred in holding that they had not presented sufficient evidence of relatedness and continuity to establish a RICO action against the Bermans lacks merit. We will therefore affirm the district court's order granting summary judgment to the Bermans on the Tenants' RICO claim essentially for the reasons set out by the district court. *See Berman II,* 792 F.Supp. at 384–88.

(2) Jordan Mitchell, Inc.'s argument under Federal Rule of Civil Procedure 26 that the district court unduly limited discovery in matters material either to their RICO claim or

their claim for punitive damages also lacks merit. The five specific areas in which it and its stockholders claim they should have been permitted further discovery are a request for financial information relating to the Bermans' real estate investment activities, the Bermans' tax returns for 1980–89, their records of charges and payments on their leases with others, information on their property interests and net worth and their long distance telephone records. Although the request for copies of the leases of other Berman tenants could have been relevant to the RICO claim, we do not believe the district court abused its discretion in deciding the burden the production of these documents would have placed on the Bermans was out of all proportion to their relevance. The district court did permit discovery of complaints other tenants made about improper charges, renegotiations of leases while claims were pending and the entry of judgments by confession.

confession of judgment without prior notice and hearing is unconstitutional.[11]

Jordan Mitchell, Inc. and its stockholders agree with the district court that Pennsylvania's post-judgment attachment procedure, as applied to confessed judgments, is unconstitutional under the Due Process Clause of the Fourteenth Amendment, but they challenge its holding that both Fox Rothschild and the Bermans were entitled to qualified immunity on the section 1983 claim, a challenge *Wyatt* teaches us must be sustained. Finally, the stockholders argue the district court abused its discretion in denying them leave to amend their complaints to assert standing as real parties in interest who have succeeded to Jordan Mitchell, Inc.'s claims against the Bermans and Fox Rothschild.

## VI. *Statement of Jurisdiction & Standard of Review*

The district court had subject matter jurisdiction over the Tenant's civil rights claim against the Bermans under 28 U.S.C.A. § 1331 (West 1993) and 28 U.S.C.A. § 1343(a)(3), (4) (West 1993). It had jurisdiction over the RICO claims under 18 U.S.C.A. § 1964 (West 1989) and 28 U.S.C.A. § 1331. It also had jurisdiction over the Tenant's claims against Fox Rothschild pursuant to 28 U.S.C.A. §§ 1331, 1343(a)(3), (4). The district court had supplemental jurisdiction over the state law claims against the Bermans pursuant to 28 U.S.C.A. § 1367 (West 1993). This Court has appellate jurisdiction over both cases pursuant to 28 U.S.C.A. § 1291 (West 1993).

■■■ We exercise plenary review over the district court's dismissal of the complaint against Fox Rothschild for failure to state a claim under Rule 12(b)(6). *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279–80 (3d .Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). More particularly, in considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), both this Court and the district court are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989); *D.P. Enters., Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *D.P. Enters.,* 725 F.2d at 944.

■■■ We also exercise plenary review over the appeal of Jordan Mitchell, Inc. from the district court's order granting summary judgment to the Bermans, *Sacred Heart Medical Ctr. v. Sullivan,* 958 F.2d 537, 543 (3d Cir.1992), and, subsidiary to that question, over the district court's interpretation of Pennsylvania law. *Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1345 (3d Cir.1990), *cert. denied,* 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991). We look to the entire record in the case against the Bermans to determine whether there is any genuine dispute about a fact material to Jordan Mitchell, Inc.'s section 1983 claim which could support a final judgment for Jordan Mitchell, Inc. if resolved in its favor. All relevant evidence and all reasonable inferences that can be drawn from the record are, however, viewed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■■■ Finally, we review the district court's denial of the stockholders' request for leave to amend the complaint for abuse of discretion. *Lewis v. Curtis,* 671 F.2d 779, 783 (3d

11. In addition to its section 1983 claim, Jordan Mitchell, Inc. initially sought a declaratory judgment that Pennsylvania procedures governing confession of judgment were unconstitutional, but it sought this declaratory relief only from the Prothonotary. As noted, the district court dismissed this claim on the basis that it was either moot or alternately barred by abstention. Jordan Mitchell, Inc. does not appeal this order.

Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

## VII. *Pennsylvania Confession of Judgment Procedure*

On the merits, we begin with an overview of the Pennsylvania practice on entry of and execution on judgments by confession.

Pennsylvania law authorizes a prothonotary[12] of any of its courts of common pleas to enter judgment by confession when a plaintiff files a complaint that includes an original or a verified copy of an instrument the defendant has signed authorizing judgment by confession, an averment of default under that instrument's terms, and an actual confession of judgment signed by any attorney acting for the defendant. Pa.R.Civ.P. 2951, 2952, 2955, 2956. After the prothonotary performs the ministerial act of entering judgment on confession, he is required immediately to notify the defendant he has done so. He must include with the notice a copy of the documents the plaintiff has filed in support of the confessed judgment. Pa.R.Civ.P. 236. In practice, the notice is usually sent the same day judgment is entered.

Once the prothonotary enters a confessed judgment, the plaintiff can secure a writ of execution by filing with the prothonotary a formal request on a form called a praecipe. In the praecipe, the plaintiff describes any property he believes the defendant may have an interest in, including bank accounts or deposits, in which latter case he names the depository bank as garnishee. Pa.R.Civ.P. 2958, 3103, 3101(b)(2), 3252. On filing the praecipe, the prothonotary issues a writ of execution forthwith, even *if* the praecipe is filed before notice of entry of the judgment has been mailed to the defendant. Pa. R.Civ.P. 2958. The writ of execution commands the sheriff, the officer who serves and enforces process for Pennsylvania's courts of common pleas, to seize any property of the defendant the plaintiff has described or, if a garnishee is named, to serve the writ upon the garnishee. Pa.R.Civ.P. 3103, 3108, 3111. Service of the writ on a garnishee attaches all of the defendant's property that the garnishee then or thereafter possesses. Pa. R.Civ.P. 3111(b). It restrains the garnishee from paying any sums to or on account of the defendant until further order of the court or termination of the attachment, subject to punishment for contempt. Pa.R.Civ.P. 3111(c), (d). The garnishee is required to promptly notify the debtor of the garnishment. Pa.R.Civ.P. 3140(a).

Pennsylvania's remedy for relief from a confessed judgment is a petition to strike and/or open the judgment. Pa.R.Civ.P. 2959. If the petition states *prima facie* grounds for relief, the court must issue a rule to show cause, fix a return date on the rule and thereafter dispose of the matter on petition and answer and any relevant evidence that can be obtained. Pa.R.Civ.P. 2959(b), (e); *see Franklin Decorators, Inc. v. Kalson,* 288 Pa.Super. 196, 431 A.2d 356, 356 (1981).

Any judgment, lien, or restraint on disposition of a defendant's property that results from entry of judgment, whether by confession or otherwise, is preserved while the proceedings to strike or open the judgment are pending. *See FRG, Inc. v. Manley,* 919 F.2d 850, 855 (3d Cir.1990) (citing *Rochester Mach. Corp. v. Mulach Steel Corp.,* 287 Pa.Super. 270, 430 A.2d 280, 286–87 (1981), *rev'd on other grounds,* 498 Pa. 545, 449 A.2d 1366 (1982)). They are not affected by the filing of the petition or any rule to show cause issued pursuant to the petition absent an express stay of execution. During the course of any proceeding to strike or open a judgment, the court has no authority to dissolve the lien of the judgment on real estate or permit the defendant access to an attached bank account unless the defendant posts security adequate to assure the judgment's payment. Pa.R.Civ.P. 2959(f), 3143(b)(1). Whether to stay execution until the petition to strike or open the judgment is decided is a matter for the court's discretion. *See Continental Bank v. Frank,* 343 Pa.Super. 477, 495 A.2d 565, 567 (1985).

If the court refuses a discretionary stay of execution, a defendant may obtain one if he

---

**12.** In Pennsylvania, the court of common pleas is the initial court of record. It is also a court of general jurisdiction. The prothonotary functions as its clerk but has no judicial function. *See Swarb v. Lennox,* 405 U.S. 191, 195, 92 S.Ct. 767, 769–70, 31 L.Ed.2d 138 (1972).

can secure a bond equal to the amount of the judgment plus probable interest and costs or make an equivalent cash deposit. Pa. R.Civ.P. 3121(b)(2), 3143(b)(1). Finally, a defendant may claim exemption from execution on a number of grounds or petition for a stay of execution on the basis of a defect in the writ, levy or service or on any other legal or equitable grounds. Pa.R.Civ.P. 3121(b). There is no express provision governing the procedure on these last requests for relief.[13] See Strick Corp. v. Thai Teak Prods. Co., Ltd., 493 F.Supp. 1210, 1217 & n. 12 (E.D.Pa. 1980). Presumably, Pennsylvania Rule of Civil Procedure 440 which generally governs proceedings on petition and rule would apply. See Pa.R.Civ.P. 2959(d), 440.

An order granting a petition to open, as opposed to one striking the judgment, leaves the judgment itself undisturbed. See FRG, Inc., 919 F.2d at 855 (citing Rochester Machine Corp., 430 A.2d at 286–87). It merely requires the plaintiff to prove his case in the usual way while the defendant is free to assert and prove any defenses he may have. Though the judgment is opened, any lien it creates and any other restraint it imposes on the debtor's use of or access to its property is continuing until the case is finally determined against the plaintiff on its merits in accord with Pennsylvania's usual procedure for action in assumpsit on an express contract. See Pa.R.Civ.P. 2959(f), comment.

If a judgment is opened, entry of a stay pending trial remains discretionary. Pa. R.Civ.P. 2959(e); see Continental Bank, 495 A.2d at 567. An order striking the judgment does annul the lien or any execution issued on it, but a judgment can be stricken only for defects that appear on the face of the record. J.F. Realty Co. v. Yerkes, 263 Pa.Super. 436, 398 A.2d 215, 217 (1979); First Pennsylvania Bank N.A. v. Weber, 240 Pa.Super. 593, 360 A.2d 715, 717 (1976).

A defendant seeking to open or strike a judgment by confession must set forth all grounds for relief in a single petition, whether they are a basis for striking the judgment or opening it. Any grounds not included in the petition, whether to strike or to open, are waived. Pa.R.Civ.P. 2959(a), (c); see J.M. Korn & Son, Inc. v. Fleet–Air Corp., 300 Pa.Super. 458, 446 A.2d 945, 947 (1982). Many of the procedural details involved in a petition to open or strike are dependent on the local rules of the particular court of common pleas in which the petition is pending. Philadelphia's local rules give a plaintiff thirty days to respond to the petition to strike or open. See Phila. Local Rule 206.1. If the petition and answer show the parties do not dispute any issues of material fact, the court of common pleas can dispose of the matter without hearing or factfinding, although briefs and legal argument may be required either by specific order or general rule. If the petition and answer indicate there are disputed facts, the parties can take written or oral depositions relating to them. When the depositions are completed, the case is submitted and the court makes findings resolving the disputed issues of fact and then grants or denies relief by applying the law to the facts it has found. See Pa.R.Civ.P. 2959(e), 2960.

Absent a discretionary stay of execution, a plaintiff executing on a judgment by confession may seize property that has been attached twenty days after the date the prothonotary originally mailed notice of entry of the confessed judgment to the defendant. Seizure may take place upon the passage of twenty days even though a petition to open or strike the judgment is pending and even if the judgment has been opened. Pa.R.Civ.P. 2958(b); see Continental Bank, 495 A.2d at 569. Moreover, if a garnishee pays funds that were attached to the plaintiff in an amount sufficient to satisfy the judgment before a petition to open or strike is decided, the petition to open or strike may become moot and, if so, the court must dismiss it. Cf., e.g., Holzapfel v. Mahony, 367 Pa.Super. 93, 532 A.2d 469 (1987) (trial court erred in

---

**13.** The Pennsylvania Supreme Court's Civil Procedural Rules Committee, to whom the Supreme Court has delegated non-exclusive initial consideration of issues that concern the plenary power that court has to promulgate procedural rules under Article V, section 10(c) of the state constitution, provides a forum for reviewing and revising these rules. See 42 Pa. Const.Stat.Ann. § 1722 (1981). While some revision might seem warranted, it would be inappropriate for us to urge or suggest any specific revisions.

granting motion to reopen confessed judgment after writ of execution had enforced judgment and real estate had been sold); *Continental Bank*, 495 A.2d at 568 (trial court did not err in refusing to grant motion to open confessed judgment where mortgaged property had been sold pursuant to sheriff's sale and opening of judgment would not affect third party's right to premises).

## VIII. *State Action*

### A. *Confession of Judgment Proceeding*[14]

■ In order to prevail on a claim under section 1983, a plaintiff must establish (1) the violation of a federally protected constitutional or statutory right, (2) by state action or action under color of law. 42 U.S.C.A. § 1983; *see Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).

The district court "rejected [the] argument that judgment by confession is unconstitutional without a prior hearing and determination as to the validity of the cognovit provision." *Fox Rothschild II*, 792 F.Supp. at 396 (citing *Berman I*, 758 F.Supp. at 278). Under the express terms of the Pennsylvania rules governing actions for confession of judgment, a creditor must present an instrument which contains a written waiver of rights signed by the debtor, along with a sworn affirmation by the creditor that the facts set forth in the complaint are true. *Id.*

at 396 n. 6 (citing Pa.R.Civ.P. 2952, 1024, 76). The district court initially held these safeguards adequately protect a defendant's right to due process in the action for confession of judgment. *Berman I*, 758 F.Supp. at 278. Building on this conclusion, it decided the state procedure for confession of judgment is facially constitutional. Later, it explained that Jordan Mitchell, Inc. had not stated a cognizable section 1983 claim because (1) neither the Bermans nor Fox Rothschild were state actors, *see Fox Rothschild II*, 792 F.Supp. at 395; *Berman I*, 758 F.Supp. at 278, and (2) the Tenant had alleged no facts from which one could reasonably infer that it had not knowingly and voluntarily waived its due process rights by signing the Lease containing the cognovit clause. *See Fox Rothschild II*, 792 F.Supp. at 397.

■ Jordan Mitchell, Inc. argues the acts of the Bermans and Fox Rothschild in confessing judgment are reasonably attributable to the state, and thus involve state action, subjecting them to liability under section 1983.

The Supreme Court addressed the question of whether and when a private party who invokes a state procedure acts under color of law for purposes of section 1983 in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar*, it first referred to "judicial recogni-

---

**14.** In dismissing Jordan Mitchell, Inc.'s claim against the Prothonotary, the district court noted in dictum in *Berman I* that "if there were a justiciable controversy, the court would be bound to abstain from litigating it by *Schall v. Joyce*, 885 F.2d 101 (3d Cir.1989)." *Berman I*, 758 F.Supp. at 277. Seizing upon this language, the Bermans and Fox Rothschild argue that the district court should have abstained from determining the constitutionality of the Pennsylvania attachment procedure under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Unlike the prothonotary, neither the Bermans nor Fox Rothschild raised abstention in the district court. *But see McLaughlin v. Pernsley*, 876 F.2d 308, 314 n. 5 (3d Cir.1989) (appellate court may decide abstention issue *sua sponte*). In any event, *Younger* abstention is appropriate only if "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall*, 885 F.2d at 106

(citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n*, 791 F.2d 1111, 1116 (3d Cir.1986)). The first part of this test is met because the parties are presently engaged in state court litigation. The corporation's attached bank account was released, however, by agreement of the parties. Accordingly, despite the existence of ongoing state proceedings, there is no state court judgment concerning this suit, and no considerations of comity counsel abstention. The second part of the *Middlesex* test is not satisfied either. The constitutional issues Jordan Mitchell, Inc. raises in federal court will not be decided in the state court litigation because the parties have agreed to release the attachment. Thus, Jordan Mitchell, Inc. has no further opportunity to raise its federal claims in the state court proceedings and the third part of the *Middlesex* test is also unsatisfied.

tion of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Lugar*, 457 U.S. at 936, 102 S.Ct. at 2753 (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)). It then articulated a two-part inquiry, each part of which must be satisfied before an act of a private party that causes a constitutional deprivation is "fairly attributable to the State," *id.* 457 U.S. at 937, 102 S.Ct. at 2753, and so makes a private actor subject to liability under section 1983:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Id.* at 937, 102 S.Ct. at 2753–54.[15]

In the cases before us, the acts of the Bermans and Fox Rothschild in causing entry of the confessed judgment meet the first part of the *Lugar* test. The power to confess judgment depends on a state statute and the procedure for doing so depends on state procedural rules of general application. For sufficient state action to be present the complaint in the Fox Rothschild case must allege state action involving sufficient force of law to meet the second part of the *Lugar* test.

If it does, the Attorneys can be treated as state actors in the case against them. Against the Bermans, liability depends on whether the record on summary judgment shows they were state actors who effectively and knowingly invoked the force of law in order to collect the rent they claimed without observing the due process requirements of pre-deprivation notice and hearing.

In *Lugar*, the Supreme Court referred to *Flagg Brothers* to illustrate the second part of section 1983's two-part state action test. In *Flagg Brothers*, a debtor challenged the constitutionality of a New York commercial law statute. The debtor contended this statute violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The *Lugar* Court explained it had not focused on the terms of the particular statute in *Flagg Brothers* but rather on the defendant's status, to determine "[a]ction by a private party pursuant to [ ] statute, without something more, was not sufficient to justify a characterization of that party as a 'state actor.'" *Lugar*, 457 U.S. at 938–39, 102 S.Ct. at 2754. The Supreme Court in *Flagg Brothers* stated the "something more" would vary with the circumstances of the case and indicated the Court had applied different tests in different circumstances.[16] *Id.* at 939, 102 S.Ct. at 2754; *see, e.g., Flagg Bros.*, 436 U.S. at 157, 98 S.Ct. at 1734 ("joint action test"); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("nexus test"); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970) ("state compulsion test"); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) ("public function test"). Regardless of its label, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State

---

**15.** A private party's liability under section 1983 should be distinguished from its liability under section 1985(3) of the Ku Klux Klan Act of 1871. It states:

> If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3) (West 1981). Liability under that section is based on conspiracy. Liability under section 1983 under *Lugar* does not overtly depend on conspiracy. *See Lugar*, 457 U.S. at 942, 102 S.Ct. at 2756.

**16.** The *Lugar* majority specifically disavowed any notion that " 'a private party's mere invocation of state legal procedures ... satisf[ies] the § 1983 requirement of action under color of law.'" *Lugar*, 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21 (quotation omitted).

in private conduct be attributed its true significance." *Lugar*, 457 U.S. at 939, 102 S.Ct. at 2755 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)). Analyzing these Supreme Court cases, the district court finally concluded that entry of the judgment did not so intimately involve the Attorneys or the Bermans in a significant state deprivation of the constitutional right to due process that it could treat either of them as state actors.

■ Before private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the constitutional deprivation, *e.g.*, authorizing its own officers to invoke the force of law in aid of the private persons' request. Under the circumstances of the present cases, we believe the district court correctly held Jordan Mitchell, Inc. had failed to allege against Fox Rothschild, or show against the Bermans, sufficient state involvement in the entry of the judgment by confession to bring them within the category of private persons acting under color of law. We agree specifically with the district court that "[a] state procedure permitting private parties to file a complaint and confess judgment essentially involves acquiescence by the state, not compulsion. In such circumstances, private conduct is not attributable to the state." *Fox Rothschild II*, 792 F.Supp. at 395 (citations omitted).

The district court also concluded that the confession of judgment itself did not so intimately involve the Bermans and their Attorneys in state action that they could be treated as acting under color of law, one of section 1983's prerequisites for liability. *Id.* at 395–96. It decided the confession of judgment did not, at the point of entry, officially invoke the force of law to collect or secure the rents the Bermans claim. It was on this basis that the district court finally concluded confession of judgment against Jordan Mitchell was not itself unconstitutional. *Berman I*, 758 F.Supp. at 278; *see also Fox Rothschild II*, 792 F.Supp. at 395 ("An improper use or

abuse by a private party of an otherwise valid state procedure is not cognizable under § 1983.") (citations omitted). We agree with the district court's ultimate conclusion that entry of the judgment is not a state action involving the force of law to an extent sufficient to hold that private persons become state actors and therefore can be liable under section 1983. The district court correctly concluded Jordan Mitchell, Inc. had failed to make out a violation of section 1983 insofar as they relied on entry of the judgment.[17]

### B. *Execution and Attachment Proceedings*

Jordan Mitchell, Inc. does not rely, however, on just the entry of the judgment. It alleges in the Fox Rothschild case and, we think, shows in the Berman case that the acts of the sheriff which the Bermans and their Attorneys set in motion denied it the use of the funds in its bank account and did involve a deprivation of property under compulsion of law. Therefore, we must also consider the proceedings for execution and the weakness of Pennsylvania's procedures for post-judgment relief.

After holding that the entry of the confessed judgment was not unconstitutional on the facts of this case, the district court went on to decide that execution on the judgment was. Explaining that execution did involve the invocation of state action by private persons acting under color of law, the district court applied the due process requirements of notice and hearing to Pennsylvania's post-judgment procedures and held a private person or his private attorney could be liable to a debtor as a state actor under section 1983 as *Lugar* construes it. *See Berman I*, 758 F.Supp. at 278–80.

As we have discussed above, under *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753–54, a complaint must include facts from which it can be deduced that a constitutional deprivation resulted from the exercise of some right or privilege created by the state and that the private party charged with the deprivation is one who can be fairly considered a state

---

17. This is not to say that entry of the judgment lacks consequences. For example, its entry imposes a lien on any real estate a debtor may own in the county in which it is entered, but this consequence seems to us analogous to the entry of a lien in the office of the Recorder of Deeds. It involves no immediate seizure or deprivation of property under force of law.

actor who has invoked the force of law. In *Lugar,* the Supreme Court stated that "private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment." *Id.* at 933, 102 S.Ct. at 2751. Moreover, a private party acts under color of law where the individual "act[s] together with or has obtained significant aid from state officials." *Id.* at 937, 102 S.Ct. at 2754.

It is at once clear that Jordan Mitchell, Inc. has alleged in one case and shown in the other that the acts the Bermans and their Attorneys caused the sheriff to do meets the first requirement of the *Lugar* test. When the sheriff, on the direct request of Fox Rothschild, themselves acting, in turn, on instruction from the Bermans, served the writ garnishing Jordan Mitchell's checking account at Fidelity, they caused the state forcibly to deprive Jordan Mitchell, Inc. of its property without the pre-deprivation notice and hearing due process requires. We think their role in this process also satisfies *Lugar*'s and section 1983's requirement that a private party accused of violating the plaintiff's constitutional rights must so act that he can be fairly considered to act under color of law. The deprivation about which Jordan Mitchell, Inc. now complains was accomplished through use of the state's attachment and garnishment procedures and restrained the garnishee from acting under penalty of law.

 Unlike the procedure for entry of a judgment by confession, writs of execution and attachment involve actions by state officials that plainly involve or threaten the use of legal force. The district court so decided. We agree and hold that a judgment creditor who uses Pennsylvania's procedure for executing on a confessed judgment acts under color of law and becomes a state actor under *Lugar.*

 The Attorneys argue, however, that they cannot be treated as persons acting under color of law because they were officers of the court representing their clients. The district court rejected this argument. It held it was not the Attorneys' role as officers of the court which made them state actors for purposes of section 1983 but rather their act,

under color of law, in invoking Pennsylvania's procedures for attachment and seizure of Jordan Mitchell, Inc.'s property. *See Fox Rothschild I,* 787 F.Supp. at 475–76. The district court explained:

> The principle that a private attorney does not become a state actor by virtue of being an officer of the court is not applicable to an attorney who invokes a state attachment procedure to seize property on behalf of a client. An attorney in these circumstances may be liable under § 1983. In such situations, the attorney acts in a capacity wholly distinct from any duty owed to the court.

*Id.* at 475–76 (citations omitted). We agree again with the district court that a private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be held liable under section 1983 if his acts cause a state official to use the state's power of legal compulsion to deprive another of property.

The district court correctly concluded the Attorneys' use of the Pennsylvania garnishment procedure and the Bermans' instructions to them to do so made both of them state actors for purposes of section 1983. *See Fox Rothschild I,* 787 F.Supp. at 477 ("Consistent with *Lugar,* private attorneys, acting on their client's behalf, who invoke the machinery of the state to effect an *ex parte* seizure of property can be found to be state actors under § 1983."); *see also Berman II,* 792 F.Supp. at 390, 392–93; *Berman I,* 758 F.Supp. at 278.

As we have said, the district court then went on to dismiss both of Jordan Mitchell, Inc.'s section 1983 claims on the basis of qualified immunity. Before addressing any qualified immunity or good faith defense the Bermans or their Attorneys may have because of their reliance on the longstanding routine use of execution of judgments by confession in Pennsylvania, we think it is appropriate to discuss the possibility that Jordan Mitchell, Inc. waived its due process rights by signing the Amendment that agreed to the terms of the original Form 60 Lease which in paragraph 11(e) says the Bermans or H.P., as landlord, can confess judgment against a tenant.

## IX. *Due Process and Waiver*

Jordan Mitchell, Inc. does not contend that Pennsylvania's procedure for confession of judgment is "facially unconstitutional," *i.e.*, always unconstitutional without regard to the circumstances under which it is used. It does argue, however, that the constitutionality of Pennsylvania's procedure for entering a confessed judgment and executing on it cannot be considered abstractly but must be looked at together with the post-judgment procedure for execution on it. In that context, Jordan Mitchell, Inc. recognizes that the validity of any particular confessed judgment depends on all the facts surrounding its authorization by the debtor, its entry by the creditor, and the post-judgment procedure governing execution on it.[18]

### A. *The Supreme Court's Decision in Swarb v. Lennox*

In relying on the United States Supreme Court's opinion in *Swarb v. Lennox*, 405 U.S.

191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), the district court also concluded that Pennsylvania's procedure for entry of a confessed judgment is not in and of itself unconstitutional on a rationale alternate to the one *Lugar* supplies. It reasoned:

> If the Supreme Court believed that a judgment could not constitutionally be confessed without a *prior* hearing on the validity of the debtor's waiver of rights, it likely would not have rejected a per se challenge in *Swarb* to Pennsylvania procedures which permit creditors to do just that. State procedure allows a debtor to open or strike a confessed judgment on this ground and plaintiffs here moved to do so in the pending state court action. *See* Pa. R.Civ.P. 2959.

*Fox Rothschild II*, 792 F.Supp. at 396 (footnote omitted) (emphasis in original).[19] In *Swarb*, a group of plaintiffs brought a section 1983 class action claiming Pennsylvania's practice of permitting judgment by confes-

---

**18.** In their briefs Jordan Mitchell, Inc. and its Stockholders also assert that Fox Rothschild and the Bermans are not entitled to qualified immunity because they should have been aware that there was no legal or factual basis on which they could have reasonably thought they had authority to confess judgment on behalf of the corporation without a due process hearing. *See* Brief of Appellants Fox Rothschild at 12; Brief of Appellants Berman at 44–45; *see also Fox Rothschild II*, 792 F.Supp. at 395 (addressing the Tenants' argument on reconsideration that district court did not adequately consider whether Fox Rothschild had violated a clearly established right in confessing judgment).

Although Jordan Mitchell, Inc. phrases its argument in terms of the Bermans' and Fox Rothschild's entitlement to qualified immunity, its arguments also address the district court's decision to dismiss the section 1983 claims insofar as that decision was based on a conclusion that Pennsylvania's procedure for the entry of a judgment by confession is constitutional. Therefore we think Jordan Mitchell, Inc. has sufficiently raised the constitutionality of the Pennsylvania procedure for entry of judgment by confession, but we also think that this argument should be rejected for the reasons set out in Part IX.B., *infra*.

Jordan Mitchell, Inc. does, however, seem to misperceive the rationale of the district court's rulings in *Fox Rothschild I* and *Berman II*. The district court granted qualified immunity to the Bermans and Fox Rothschild for the actions they took to trigger Pennsylvania's post-judgment execution procedures. *See Berman II*, 792 F.Supp.

at 392–93; *Fox Rothschild I*, 787 F.Supp. at 478–80. It did not reach the issue whether the Bermans or Fox Rothschild were entitled to qualified immunity for any acts they took in entering the confessed judgment. It had already determined that procedure was constitutional. The constitutionality of the procedure for entry of a judgment by confession was the sole basis for the district court's dismissal of Jordan Mitchell, Inc.'s section 1983 claims insofar as they arose out of the confession itself. We too conclude that entry of the judgment did not give Jordan Mitchell, Inc. a cause of action against the Bermans and Fox Rothschild holding in the alternative that entry of the judgment did not involve the Bermans and Fox Rothschild in state action of the kind that makes private parties persons acting under color of law. *See* Part VIII.A. *supra*.

**19.** The district court held the mere entry of judgment by confession did not deprive Jordan Mitchell of any constitutionally cognizable property interest. *See Fox Rothschild II*, 792 F.Supp. at 396 ("Prior to execution, however, no secured right of the debtor is impinged.... The right to be heard and to contest the validity of a cognovit debtor's waiver of rights arises at the time of an *execution* of a confessed judgment. Thus, ... [Jordan Mitchell] did not suffer the deprivation of property complained of until a writ of execution was served on their bank.") (citations and footnote omitted). Jordan Mitchell, Inc. does not effectively address this aspect of the district court's holding.

sion was facially unconstitutional because it always deprived debtors who signed documents containing a power to confess judgment of their procedural due process right to pre-deprivation[20] notice and hearing. In *Swarb*, the class plaintiffs also had to meet the contention that a debtor's execution of a written agreement containing a cognovit clause was a knowing, intelligent, and voluntary waiver of the constitutional right to due process. *Swarb*, 405 U.S. at 196, 92 S.Ct. at 770.

A three-judge district court agreed with the plaintiff class, but only in part.[21] It held that a debtor's constitutional right to pre-deprivation notice and hearing could be waived if it appeared the debtor who had signed a document containing a warrant of attorney to confess judgment did· so voluntarily, knowing that he or she was waiving a constitutional right to pre-judgment notice and hearing and understood the consequences of that waiver. *Id.* at 198–99, 92 S.Ct. at 771–72. The three-judge district court treated the waiver issue as an issue of fact about the debtor's subjective state of mind.[22] It went on to conclude that Pennsylvania's practice of allowing judgment by confession could not be constitutionally applied to a subclass of consumer debtors who had income of less than $10,000.00. It reasoned the members of that class were all parties to adhesive contracts and had no real understanding of the importance of the rights they were waiving or the consequences of their waiver. *Id.* at 199, 92 S.Ct. at 771–72.

The defendants in *Swarb* chose not to appeal, but the class, dissatisfied with the district court's limitation of relief to the subclass of low income consumer debtors, sought further help in the Supreme Court.[23] *Id.* at 200, 92 S.Ct.· at 772. There, they argued the district court erred in limiting relief to a subclass of low-income consumer debtors rather than extending it to all Pennsylvania debtors who had signed documents allowing judgments to be confessed against them. This argument did imply that Pennsylvania's rules concerning judgments by confession were invariably, that is, "facially" unconstitutional. It was rejected by the Supreme Court when it denied *Swarb*'s plaintiff class any further relief and affirmed the district court's order. *Id.*

In doing so, the Supreme Court specifically said:

> This affirmance, however, does not mean that the District Court's opinion and judgment are approved as to their other aspects and details that are not before us. As has been noted, the named defendants and the intervenors have taken no cross appeal. . . . In the absence of a cross appeal, the opposition is in no position to attack those portions of the District Court's judgment that are favorable to the plaintiff-appellants.[24]

*Id.* at 201, 92 S.Ct. at 772 (footnote added). Thus, the Supreme Court has yet to take a position on whether Pennsylvania's procedure for the entry of a confessed judgment deprives low-income families or any other class of persons who has given a creditor a

---

**20.** We use the term "pre-deprivation" instead of "pre-judgment" because the latter may appear to assume the point at issue and obliterate any distinction between pre- and post-judgment deprivations.

**21.** The three-judge district court was convened under the former version of 28 U.S.C.A. § 2284 which then provided for three-judge district courts whenever the constitutionality of a state statute was directly drawn in question. At that time, its broader scope was coupled with an appeal to the Supreme Court as of right.

**22.** The Supreme Court disavowed many aspects of the three judge district court's opinion.

**23.** 28 U.S.C.A. § 1253 then, as now, provided for direct appeal to the Supreme Court of any order granted or denied by a three judge district court.

28 U.S.C.A. § 1253 (West 1993). *See* footnote 21, *supra*.

**24.** This dictum, together with the fact that the *Swarb* subclass was a Rule 23(b)(3) class confined to the Eastern District of Pennsylvania, may explain why Pennsylvania practitioners and judgment creditors have not hesitated to confess judgment and then routinely execute on them without appearing to give full consideration to the risk of section 1983 liability they incur in relying on state procedural rules that permit a creditor to seize a debtor's property without any pre-deprivation notice or hearing and offer only an inadequate and cumbersome post-deprivation remedy on petition and rule.

power to confess judgment of their constitutional right to procedural due process.

In *Swarb,* the Supreme Court referred to its decision of even date in the companion case of *D.H. Overmyer Co., Inc. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). There, the Supreme Court held a debtor could waive his due process rights to pre-deprivation notice and hearing by executing a note containing a cognovit provision or a warrant to confess judgment.

In *Overmyer,* the Supreme Court was considering Ohio's confession of judgment procedure as it applied to a promissory note Overmyer had signed in favor of Frick. This note was given in consideration of Frick's granting Overmyer's request for additional time to pay a pre-existing note that did not have a warrant authorizing entry of judgment by confession. *Overmyer,* 405 U.S. at 180, 92 S.Ct. at 779–80. The Supreme Court held Overmyer's constitutional right to due process was not violated when judgment was confessed against him on the new note without prior notice or hearing, *id.* at 187, 92 S.Ct. at 783, because "due process rights to notice and hearing prior to a civil judgment are subject to waiver." *Id.* at 185, 92 S.Ct. at 782.

### B. The Process Due on Entry and Execution on Judgments by Confession

 After carefully reviewing *Swarb* and *Overmyer,* we think the district court correctly held that Pennsylvania's practice in allowing the entry of judgments by confession is not unconstitutional. *See FRG, Inc. v. Manley,* 919 F.2d 850, 856–57 (3d Cir.1990) (overruling bankruptcy court decision in *In re Souders,* 75 B.R. 427 (Bankr.E.D.Pa.1987) that Pennsylvania confession of judgment procedure was facially unconstitutional).

The district court went on to hold, however, "[b]ecause the Pennsylvania garnishment procedure in question does not provide for a discretionary review and approval by a professionally competent official, and because it does not guarantee a prompt postseizure adjudication of a debtor's protest, the procedure fails to comport with due process of law." *Berman I,* 758 F.Supp. at 280 (footnote omitted). In so holding it implicitly relied on cases holding pre-judgment attachments or seizures are unconstitutional absent either pre-seizure or prompt post-seizure notice and hearing. *See, e.g., North Georgia Finishing Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975) (Georgia statute allowing court clerk to issue writ of garnishment against bank account without notice, opportunity for early hearing or participation by judicial officer held unconstitutional); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 605–07, 94 S.Ct. 1895, 1899–1900, 40 L.Ed.2d 406 (1974) (Louisiana sequestration statute which required judicial approval, verified petition or affidavit and bond and entitled debtor to seek immediate dissolution of writ or to regain possession of goods purchased under installment contract by filing his own bond did not violate due process); *Jonnet v. Dollar Sav. Bank,* 530 F.2d 1123, 1129–30 (3d Cir.1976) (Pennsylvania foreign attachment procedures which required only praecipe specifying property to be seized, no official review, no indemnification for damages for wrongfully seized property and no opportunity for immediate hearing held unconstitutional).

We think the district court's general exposition of the procedural protections that due process requires, absent waiver, before garnishment or attachment can constitutionally take place is correct. It said:

> First, to obtain a writ of garnishment or attachment the creditor must present a sworn document setting forth in non-conclusory terms the basis for his claim. Second, the issuance of the writ should be conditioned on a review [25] and an approval by an official invested with the requisite

---

**25.** Judicial review and approval are not required. The reviewing official must, however, possess sufficient competence adequately to determine whether the conditions justifying an attachment have been met. *Berman I,* 758 F.Supp. at 279 (citing *Finberg v. Sullivan,* 634 F.2d 50, 62 (3d Cir.1980) (in banc); *Jonnet,* 530 F.2d at 1130;

*Hines v. Pettit,* 638 F.Supp. 1269, 1270 (E.D.Pa. 1986)). Under the Pennsylvania procedure, the prothonotary, acting in a ministerial capacity, has no discretion. If the rules are complied with he must enter the judgment and, on request, issue a writ of execution. *Id.* at 280.

discretion.... Finally, there must be an opportunity for a prompt post-seizure hearing at which the creditor must demonstrate at least the probable validity of his claim.

*Berman I*, 758 F.Supp. at 279–80 (citations omitted and footnote added). We agree with the district court that procedural rules which included these protections could largely avoid the problems the parties to this case face and, at the same time, preserve the legitimate aspects of a creditor's remedy that has shown its commercial utility from colonial times to the present.[26] Because Pennsylvania permits writs of execution to be enforced on confessed judgments without providing any means for securing a pre-deprivation hearing or obtaining prompt post-seizure relief, the district court correctly concluded the acts of the Bermans and their Attorneys, absent pre-judgment waiver, deprived Jordan Mitchell, Inc. of due process once they culminated in the sheriff's seizure of Jordan Mitchell, Inc.'s bank account.

This conclusion is in accord with our decision in *Finberg v. Sullivan*, 634 F.2d 50 (3d Cir.1980) (in banc). There, this Court addressed the constitutionality of Pennsylvania's post-judgment garnishment procedures as they were applied to execution on a default judgment. We reviewed the Supreme Court's then recent decisions on pre-judgment seizures, adopted their rationale and concluded they controlled the due process issue then before us. *Id.* at 56–58. We expressly decided Pennsylvania's post-judgment garnishment rules did not provide the prompt post-seizure hearing due process requires. *Id.* at 61.

Here, the district court adopted a similar analysis in holding Pennsylvania's garnishment procedure was unconstitutional as applied to execution on judgments obtained by

confession because it did not provide a prompt post-seizure hearing. On appeal the Bermans and Fox Rothschild say their cases are distinguishable from *Finberg* on several grounds. They argue the district court erroneously extended *Finberg* from default judgments to writs of execution issued to enforce confessed judgments. They point out that *Finberg* was a relatively unsophisticated individual, whereas this case concerns seizure of the property of a business corporation leasing commercial office space. They also point out that the funds garnished in *Finberg* were arguably exempt from attachment because they were necessary to meet the basic needs of the individual.

We are not so sure that *Finberg* can be read in the limited way the Bermans and Fox Rothschild would have us read it. There we stated while "notice and an opportunity to be heard before an attachment are not absolutely necessary.... [a] procedural protection [to be] adequate [should] represent[ ] a fair accommodation of the respective interests of creditor and debtor." *Id.* at 58. Indeed, it could be argued that *Finberg*, in which a debtor had ignored pre-seizure process, should apply a *fortiori* to a debtor who is served with no process at all before its property is seized. We do not need to decide, however, whether an analogy from the procedure on default judgments we considered in *Finberg* to post-judgment procedure on confessed judgments is an apt one. Instead, we think the district court should have considered whether Jordan Mitchell, Inc. validly waived its due process right to pre-deprivation notice and hearing after when it signed the Amendment incorporating the Lease with the warrant to confess judgment that Joe J. Jordan, FAIA, P.C. had signed after consulting counsel.[27]

---

**26.** Judgment by confession was first authorized by the General Assembly of Pennsylvania by the Act of February 24, 1806, P.L. 334, Sm. L. 270. While this Act was repealed in its entirety by the Judiciary Act Repealer Act, 42 P.S. § 20001 *et seq.*, section 2737(3) of the Judiciary Act of 1976 and Pennsylvania Rules of Civil Procedure 2950 through 2986 continue to provide a mechanism for judgment by confession. We again note the Pennsylvania Supreme Court's power to make procedural rules. *See* footnote 13, *supra.*

**27.** Whether the Amendment can be construed or interpreted to incorporate paragraph 11(e) of the Form 60 Lease Jordan Mitchell, Inc.'s predecessor Joe J. Jordan, FAIA, P.C. signed is a question that may need to be decided on remand. If so, its resolution will involve, in the main, ordinary principles of contract law as the Pennsylvania courts have decided them in relation to documents authorizing judgment by confession. We consider some of these principles in Part X, *infra,* where we discuss the availability of a good faith

## C. *Waiver*

*Swarb* and *Overmyer* plainly decide a debtor can waive its due process rights to a pre-deprivation hearing and notice when it voluntarily and intelligently consents to an agreement containing a cognovit clause. Nevertheless, *Swarb* and *Overmyer* also indicate waiver is usually a question of fact. Thus, in *Overmyer*, the Supreme Court cautioned creditors:

> Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

*Overmyer*, 405 U.S. at 188, 92 S.Ct. at 783. The constitutional validity of any particular confession of judgment procedure depends on the validity of the debtor's waiver:

> The Pennsylvania system leading to confessed judgment and execution does comply with due process standards provided "there has been an understanding and voluntary consent of the debtor in signing the document."
>
> If, however, there is no such understanding consent, the procedure violates due process requirements of notice and an opportunity be heard.

*Swarb*, 405 U.S. at 198, 92 S.Ct. at 771 (citations, quotation and paragraph numerals omitted).

Accordingly, a court faced with a due process challenge to a confessed judgment should always inquire whether the judgment debtor's execution of a document permitting judgment by confession is a valid waiver of his constitutional right to pre-deprivation notice and hearing. *See, e.g., Overmyer*, 405 U.S. at 185–187, 92 S.Ct. at 782–83; *FRG, Inc.*, 919 F.2d at 856–57.

*Swarb* and *Souders* make it clear that a judgment against a reasonably sophisticated, corporate debtor who has signed an instrument containing a document permitting judgment by confession as part of a commercial transaction is enforceable in the same manner as any other judgment. Other judgments entered by confession may or may not be enforceable depending on all the facts surrounding the execution of the instrument.

Thus, we now consider whether the facts set forth in Jordan Mitchell, Inc.'s complaint against Fox Rothschild would, if proven, establish that Jordan Mitchell, Inc. did not knowingly waive its due process right to pre-judgment notice and hearing and whether, in the case against them, the Bermans have shown there is no genuine dispute about any material fact whose resolution adverse to them would negate waiver. In deciding these questions, we reemphasize the need to give Jordan Mitchell, Inc. the advantage of every inference that can be drawn from the allegations of its complaint against Fox Rothschild and, as to the Bermans, from the evidence before the district court when it granted the Bermans' Rule 56 motion for summary judgment.

Though the Supreme Court's opinion in *Overmyer* emphasized the importance the facts of an individual case have in determining whether a "facially" valid confession of judgment procedure can be constitutionally applied to any particular case, it refused to define a standard for determining when the right to pre-deprivation procedural due process is waived in connection with execution on a confessed judgment. In *Overmyer*, the court assumed, without deciding, that waiver would be judged under the same standards that apply to a criminal defendant's waiver of constitutional rights. *Overmyer*, 405 U.S. at 185, 92 S.Ct. at 782. On that assumption, it considered whether Overmyer's consent to judgment by confession was "voluntary, knowing, and intelligently made...." *Id.* at 185, 92 S.Ct. at 782 (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970); *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)).

In deciding *Overmyer* had waived his due process right to prejudgment notice and hearing under that standard, the Supreme Court emphasized that no great inequality of bargaining power seemed to be present because one corporation was there dealing with

defense to private persons who become defendants in section 1983 actions.

another. *Id.* at 186, 92 S.Ct. at 782–83. It also pointed out that Overmyer did not contend either it or its counsel had failed to understand the significance of the provision for judgment by confession in the note it signed. *Id.* In addition, it referred to the fact that both parties were represented by counsel during negotiations for an extension of time to pay an earlier note on which Overmyer was in default, and the new note, with its clause allowing judgment by confession, resulted from these negotiations, *id.* at 183, 92 S.Ct. at 781, in which inclusion of the clause permitting Frick to enter a confessed judgment was specifically agreed on. *Id.* Finally, the Supreme Court noted the extension was not the only fresh consideration for inclusion of the power to enter judgment by confession. Frick had also released three mechanic's liens it held on Overmyer's property and agreed to a reduction both in the monthly payments due on the note and the interest rate. *Id.* at 183, 186, 92 S.Ct. at 781, 782–83. On these facts, the Supreme Court concluded that Overmyer had "voluntarily, intelligently, and knowingly waived the [due process] rights it otherwise possessed to prejudgment notice and hearing, ... with full awareness of the legal consequences [of its actions]." *Id.* at 187, 92 S.Ct. at 783.

The Supreme Court stated specifically, however, that its decision in *Overmyer* was "not controlling precedent for other facts of other cases." *Id.* at 188, 92 S.Ct. at 783. Thus, whether a debtor has effectively waived its right to pre-seizure notice and hearing may not often be subject to quick resolution on a Rule 12(b)(6) motion to dismiss. We think that is the case here. We also believe the record before the district court on the Bermans' motion for summary judgment does not eliminate all questions of fact concerning waiver.

 Whether a person has waived his constitutional rights is a question of federal law. *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966) ("[W]aiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law. There is a presumption against the waiver of constitutional rights and for a waiver to be effective it must

be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' ") (citation omitted). As we have explained, the exact federal standard governing a valid waiver in the context of confession of judgments has never been fully articulated.

 Nevertheless, to establish waiver, we do not think it is necessary for the Bermans or Fox Rothschild to show that Jordan Mitchell, Inc. knew all the intricacies and arcane details of the writs Pennsylvania courts use to enforce judgments. Instead, a reasonably well informed debtor need only be aware that he has given away an important right to notice and hearing before his creditor, acting under color of law, can enlist the state's power of legal compulsion to seize the debtor's property in order to satisfy or secure its debt. We think, rather, the debtor need only know that if he does not comply with the terms he has agreed to for payment of the debt, the creditor may confess judgment against him and forthwith seize his property to satisfy the debt it says is owed.

 We also think it is sometimes proper to infer that a person who retains a lawyer and then executes an instrument which gives its landlord power to confess judgment for rent in arrears has knowingly authorized the landlord to resort to standard post-judgment procedures for the collection of money judgments once judgment has been confessed and so has waived its right to pre-deprivation notice and hearing.

The clause in the standard form lease before us which permits judgment by confession states:

> If the rent, fixed, and/or additional, shall remain unpaid on any day when the same ought to be paid, Lessee hereby empowers any attorney ... to appear as attorney for Lessee in any and all actions which may be brought for said arrears of rent, fixed and/or additional and to sign for Lessee an agreement for entering in any competent Court, an amicable action or actions for the recovery of all arrears of rent, fixed and/or additional, and in said suits or in said amicable action or actions to confess judgment against Lessee *for the recovery of all*

*arrears of rent,* fixed and/or additional, as aforesaid, and for interest and costs.... App. at 59 (emphasis added). It clearly says the Bermans, after confessing judgment for rent in arrears, can cause the property of their Tenant to be seized and sold to satisfy the rent claimed due.

This record also shows, however, that it was Joe J. Jordan, FAIA, P.C. who signed the document which contains the text of the warrant to confess judgment that the Bermans and their Attorneys relied on to obtain the disputed judgment and then execute on it. Whether Jordan Mitchell, Inc., as a successor to Joe J. Jordan, FAIA, P.C. was bound by the form lease and, if so, whether either was aware of its significance are matters that have not yet been determined. We think the following facts are material to that determination.

Jordan Mitchell, Inc.'s predecessor, Joe J. Jordan, FAIA, P.C., was not represented by counsel at the time it signed the Form 60 Lease containing the confession of judgment clause. On the other hand, Jordan Mitchell, Inc. was represented when it agreed to the Amendment extending the term of the Lease which we assume, for purposes of this opinion, incorporates the terms of the document its predecessor Joe J. Jordan, FAIA, P.C. had signed.[28] In addition, both Joe J. Jordan, FAIA, P.C. and Jordan Mitchell, Inc. operate in corporate form and the Lease in question is a lease for a commercial office.

If the confession of judgment clause and its attendant consequences was brought to the attention of Jordan Mitchell, Inc. when it signed the Amendment extending the Lease, an inference of waiver would be strongly supported. At this stage, however, waiver does not conclusively appear. Whether Jordan Mitchell, Inc. waived its due process right to pre-deprivation notice and hearing when it signed the Amendment which is said to incorporate the warrant to confess judgment clause set forth in paragraph 11(e) of the initial Form 60 Lease is a matter for further consideration on remand.

Though we think a debtor need not have detailed technical knowledge of the state law on confession in order to waive its due process rights, it also seems to us that a creditor's failure to comply with all of the state's technical rules concerning judgment by confession is not usually material to the issue of knowing and intelligent waiver. Otherwise, a failure to comply with state law would automatically translate into a section 1983 claim. Nevertheless, the state requirements may sometimes be of limited relevance on the federal claim.[29] In Pennsylvania, a warrant to confess judgment must be in writing and signed by the party against whom it is enforced. Moreover:

> Pennsylvania will not presume an intent of parties to a modified contract to perpetuate a warrant of attorney. *Solazo v. Boyle,* 365 Pa. 586, 76 A.2d 179 (1950). Nor will a lease's cognovit clause be binding upon the lessee's assignee. *Ahern v. Standard Realty Co.,* 267 Pa. 404, 110 A. 141 (1920). And a warrant of attorney on the second page of a document will not be

**28.** Whether it can be so construed as a matter of law or so interpreted as a matter of fact may also be an issue the district court will have to decide, in the first instance, on remand. *See* footnote 3, *supra,* and text that follows it.

**29.** It also have some relevance on the good faith of a creditor and its attorneys. On waiver, we look objectively to the debtor's knowledge in allowing judgment by confession. On good faith, we look to the creditor's state of mind when he enters the judgment and causes execution on it. With respect to the latter, we adopt substantially the same standard as the Court of Appeals for the Fifth Circuit did when *Wyatt* was before it on remand. *See Wyatt v. Cole,* 994 F.2d 1113, 1120 (5th Cir.) ("private defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should

have known of the statute's constitutional infirmity."), *cert. denied,* —— U.S. ——, 114 S.Ct. 470, 126 L.Ed.2d 421 (1993). We realize certain evidence could also be relevant on the creditor's knowledge, *e.g.,* evidence that the debtor was given legal advice about Pennsylvania practice on confession. Conversely, a reasonable commercial debtor may know what it means to authorize judgment by confession but still rely on protection on the restrictions Pennsylvania places on its use. Pennsylvania law would then be relevant on waiver. Here, we wish to make clear that waiver is viewed from the standpoint of a reasonable debtor. The test is objective but we think the standard for good faith is subjective, and we decide it based on the creditor's state of mind. *See* Part X, *infra.*

conclusive against the signer of the first page. *Frantz Tractor Co. v. Wyoming Valley Nursery*, 384 Pa. 213, 120 A.2d 303 (1956).

*Scott v. 1523 Walnut Corp.*, 301 Pa.Super. 248, 447 A.2d 951, 956 (1982) (internal quotations omitted). The Pennsylvania Supreme Court has also stated:

> a warrant of attorney to confess judgment must be self-sustaining; to be self-sustaining, the warrant must be in writing and signed by the person to be bound by it; and the requisite signature must bear a direct relation to the warrant and may not be implied extrinsically nor imputed from assignment of the instrument containing the warrant.

*Frantz Tractor Co., Inc. v. Wyoming Valley Nursery*, 384 Pa. 213, 120 A.2d 303, 306–07 (1956). Thus, while a cognovit provision may appear in the body of a contract, "[t]he mere physical inclusion of the warrant of attorney in a mass of fine type verbiage on each reverse sheet does not of itself make it part of the contract." *Cutler Corp. v. Latshaw*, 374 Pa. 1, 97 A.2d 234, 236 (1953). We think these requirements are meant to give some assurance that those who may suffer a judgment obtained by confession are made aware of that possibility. Through them, Pennsylvania seeks to insure a reasonable debtor's objective understanding of his or her creditor's intent to enforce the debtor's obligations by confessed judgment.

■ Pennsylvania law also makes it clear that an assignment of a lease does not bind an assignee to a confession of judgment provision in the leasehold that is assigned. *See Scott*, 447 A.2d at 956; *Frantz Tractor Co.*, 120 A.2d at 305 ("An assignment of a lease binds the assignee with all the terms and conditions thereof except a provision for a warrant of attorney to confess judgment against the lessee; and, this is so even where the assignee formally agrees with the lessor to an assignment of a lease by endorsing thereon that he, the assignee, accepts it 'according to its full tenor and effect.'"). Jordan Mitchell was not a party to the original Lease. It was between H.P. and Joe J. Jordan, FAIA, P.C. Jordan Mitchell, Inc. seems to be a successor to the original lessor,

not an unrelated assignee. The record does not indicate there was an actual assignment of the lease. In any event, it seems questionable, as a matter of Pennsylvania law, that Jordan Mitchell, Inc., the original lessee's successor, could be bound by a confession of judgment clause found only in the text of a document signed by its predecessor.

■ Pennsylvania law also indicates a confession of judgment clause contained in one document will not become a part of another document that incorporates the terms of the document setting out the power to confess judgment by general reference. *See Egyptian Sands Real Estate, Inc., v. Polony*, 222 Pa.Super. 315, 294 A.2d 799, 803–04 (1972); *Frantz Tractor Co.*, 120 A.2d at 305. Under federal law, on the other hand, it seems a creditor or attorney relying on waiver must show only that the debtor understood it could be deprived of the use of its property during an extended period without pre-deprivation notice of hearing. Accordingly, though none of these state cases may completely control, either on waiver or good faith, the parties' knowledge of them may be relevant on both.

In any event, we think the district court will need to remember all these things when it considers waiver on remand.

## X. *Qualified Immunity and Good Faith*

■ We consider next whether private actors can substitute good faith for immunity and, if so, how the two may differ. The district court granted the Bermans' Rule 56(c) summary judgment motion and the Attorneys' Rule 12(b)(6) motion because of its conclusion that the "defendants are entitled to qualified immunity from liability on plaintiffs' claim." *Fox Rothschild I*, 787 F.Supp. at 482. Whether private defendants threatened with section 1983 liability, like their public counterparts, can assert qualified immunity in a section 1983 action was at the time an open question in this circuit. The courts of appeals of other circuits that had ruled on it were sharply divided. *Compare F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1318–19 (9th Cir.1989) (no qualified immunity for private section 1983 defendant) *and Dun-*

can v. Peck, 844 F.2d 1261, 1264 (6th Cir. 1988) (same) with Jones v. Preuit & Mauldin, 851 F.2d 1321, 1325 (11th Cir.1988) (in banc) (private section 1983 defendant entitled to same qualified immunity as public official), vacated on other grounds, 489 U.S. 1002, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989); Watertown Equip. Co. v. Norwest Bank Watertown, N.A., 830 F.2d 1487, 1489–90 (8th Cir. 1987) (same), cert. denied, 486 U.S. 1001, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988) and Folsom Inv. Co. v. Moore, 681 F.2d 1032, 1037 (5th Cir. Unit A 1982) (same); see also Frazier v. Bailey, 957 F.2d 920, 928–29 (1st Cir.1992) (qualified immunity available to private section 1983 defendant sued for acts undertaken at behest of state to assist state in performing essentially governmental function); accord DeVargas v. Mason & Hanger–Silas Mason Co., 844 F.2d 714, 722 (10th Cir.1988).

After the district court had issued its opinion, however, the Supreme Court resolved the split among the circuits by holding that private defendants faced with a section 1983 claim for invoking a state replevin, garnishment or attachment procedure cannot interpose a qualified immunity defense. See Wyatt v. Cole, — U.S. —, —, 112 S.Ct. 1827, 1834, 118 L.Ed.2d 504 (1992). The availability of qualified immunity to private persons who act under color of law is no longer an open question. It is settled. Private persons cannot assert it.

■ Though Wyatt overrules the district court's holding that the Bermans and their Attorneys are entitled to qualified immunity, it leaves open the question whether private parties acting under color of law can raise an affirmative defense of good faith in a section 1983 action. See id. ("[W]e do not foreclose the possibility that private defendants faced with § 1983 liability under Lugar ... could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens."); see also Lugar, 457 U.S. at 942 n. 23, 102 S.Ct. at 2756 n. 23 ("[The] concern[ ] that private individuals who innocently make use of seemingly valid state laws would be responsible, if the law is subsequently held to be unconstitutional, for the consequences of their actions.... should be dealt with not by changing the character of the cause of action but by establishing an affirmative defense.").

In Wyatt, this open question concerning good faith came before the Court of Appeals for the Fifth Circuit on remand. It concluded good faith is a defense available to private persons who act under color of law. It said: "[P]rivate defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity." Wyatt v. Cole, 994 F.2d 1113, 1120 (5th Cir.), cert. denied, — U.S. —, 114 S.Ct. 470, 126 L.Ed.2d 421 (1993). We are in basic agreement, but we believe "malice" in this context means a creditor's subjective appreciation that its act deprives the debtor of his constitutional right to due process.[30] If it turns out that Jordan Mitchell, Inc. has not waived its right to pre-deprivation notice and hearing, the district court, on remand, will have to decide whether the Bermans and their Attorneys met this standard.[31]

---

**30.** We note that use of this standard will make it possible to decide the good faith issue on summary judgment in some cases. Thus, in Wyatt, Justice Kennedy, joined by Justice Scalia, concurring said:

> The distinction I draw is important because there is support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law; and therefore under the circumstances of this case, lack of probable cause can only be shown through proof of subjective bad faith. Birdsall v. Smith, 158 Mich. 390, 394, 122 N.W. 626, 627 (1909).

Thus the subjective element dismissed as exceptional by the dissent may be the rule rather than the exception.
Wyatt, — U.S. at —, 112 S.Ct. at 1837 (Kennedy, J., concurring); see also id. at —, 112 S.Ct. at 1839 (Rehnquist, C.J., dissenting).

**31.** The United States Court of Appeals for the Sixth Circuit has also embraced such a good faith defense. See Duncan v. Peck, 844 F.2d 1261 (6th Cir.1988). It reasons "prior to the passage of section 1983, ... the common law required that the plaintiff must prove that the 'attachment was sued out wrongfully, maliciously, and without probable cause,' ... before a defendant could be held liable for the torts of

In addressing these issues, we note especially some of the concerns the Supreme Court expressed in *Lugar* and *Wyatt*. In particular, we note the statement that persons asserting section 1983 claims against private parties "could [be] require[d] to carry additional burdens[,]" —— U.S. at ——, 112 S.Ct. at 1834, and the statements in *Lugar* which warn us a too facile extension of section 1983 to private parties could obliterate the Fourteenth Amendment's limitation to state actions that deprive a person of constitutional rights and the statutory limitation of section 1983 actions to claims against persons acting under color of law. *See Lugar,* 457 U.S. at 936–37, 102 S.Ct. at 2753–54. These considerations lead us to conclude "good faith" gives state actors a defense that depends on their subjective state of mind, rather than the more demanding objective standard of reasonable belief that governs qualified immunity.

Because we believe private actors are entitled to a defense of subjective good faith we also think the Pennsylvania cases that place state law limitations on the use of judgment by confession may, as we have already pointed out, sometimes be relevant on the good faith issue.[32] We think, though, these principles of state law lose force in the context of good faith because they are based on objective theories of contract. They are concerned with what a reasonable person would think his or her creditor can do. On the other hand, good faith is usually concerned with what a particular actor thinks is all right to do. Nevertheless, because of our belief that state law on confession of judgment may have some bearing on the Bermans' and Fox Rothschild's state of mind when they used Pennsylvania's procedure for judgment by confession to seize Jordan Mitchell, Inc.'s property without prior notice or hearing, we will briefly mention some of the state cases we think especially likely to bear on good faith.

We specifically recall Pennsylvania's strict construction of a provision authorizing judgment by confession against the creditor who invokes it. *Egyptian Sands Real Estate, Inc.,* 294 A.2d at 803 (citing *Grady v. Schiffer,* 384 Pa. 302, 121 A.2d 71 (1956)). We also note again that in Pennsylvania "the consent of the party authorizing confession [must] be clearly given." *Id.* (citing *Cutler Corp. v. Latshaw,* 374 Pa. 1, 97 A.2d 234 (1953)).

Though we believe in accord with the court of appeals in *Wyatt* that a good faith defense is available, we cannot say on this record that good faith indisputably appears.[33]

Finally, we note section 1983 does not include any *mens rea* requirement in its text, but the Supreme Court has plainly read into it a state of mind requirement specific to the particular federal right underlying a § 1983 claim. *See Parratt v. Taylor,* 451 U.S. 527, 532, 101 S.Ct. 1908, 1911, 68 L.Ed.2d 420 (1981). It is also clear that a negligent deprivation of due process will not sustain a § 1983 claim. *See Daniels v. William,* 474 U.S. 327, 333–34, 106 S.Ct. 662, 666–67, 88 L.Ed.2d 662. ("Where a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is *constitutionally* required.'") (citing *Parratt,* 451 U.S. at 548, 101 S.Ct. at 1919 (Powell, J. concurring in result) (emphasis in original). In *Daniels* the Supreme Court stated a plaintiff who wishes to sustain a § 1983 claim based upon a violation of procedural due process must, at a minimum, prove recklessness or "gross negligence" and in some instance may be required to show a "deliberate decision to deprive" the plaintiff of due process. Because this case concerns a deprivation of procedural due process recent decisions of this Court requiring a person claiming a deprivation of substantive due process to prove the defendant's act "shocks the conscience" may not apply. At a minimum,

---

malicious prosecution or wrongful attachment." *Id.* at 1266 (quoting *Folsom Inv. Co.,* 681 F.2d at 1038) (citation omitted).

**32.** *See* footnote 29, *supra,* and immediately thereafter our exposition of Pennsylvania case law in the text of Part IX on waiver.

**33.** The policies that permit a government actor who is denied summary judgment on a qualified immunity defense an immediate right to appeal do not clearly apply to a private person's claim of good faith.

however, Jordan Mitchell, Inc. must prove gross negligence. Whether it must prove recklessness or some higher degree of culpability is an issue not now before us which we leave initially to the district court if the issue arises on remand. Therefore, we suggest that the district court should take care not to incorrectly place the burden of proving the defendants' *mens rea* on the defendants. We think the need to produce evidence and prove that both the Bermans and Fox Rothschild acted at least recklessly or with gross indifference to Jordan Mitchell, Inc.'s rights always remains on Jordan Mitchell, Inc.

### XI. *Amendment of the Complaint*

Finally, we consider the standing of Jordan Mitchell, Inc.'s stockholders to pursue their own section 1983 claims. The district court held the individual stockholders did not have standing because an action for injury to a corporation by virtue of attachment of its bank account must be pursued in the name of the corporation. *Fox Rothschild I,* 787 F.Supp. at 474–75. We think that conclusion is correct. In a motion for reconsideration, however, the stockholders asked leave to amend their complaints to assert their own standing as real parties in interest. *Fox Rothschild II,* 792 F.Supp. at 395. Specifically, they sought to allege that Jordan sold his interest in Jordan Mitchell to Wallace, Roberts and Todd ("WRT") on April 1, 1989, before confession of judgment and attachment of the Jordan Mitchell bank account took place on May 16, 1989. Under the agreement between Jordan and WRT, they say Jordan assumed liability for any claim arising under the Lease, agreed to hold WRT harmless and defend it against any such claim, and in return received an assignment of any claim he or the corporation might have against the landlord or its agents. They also allege an earlier agreement in which Mitchell conveyed his ownership interest in the corporation to Jordan and gave Mitchell an equal share in this potential burden or benefit.

Federal Rule of Civil Procedure 17(a) provides:

(a) **Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a). The factors that a court may appropriately consider in denying a motion to amend include delay, undue prejudice to the opposing party and futility of amendment. *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

Here, in refusing to permit amendment of the complaint, the district court first reasoned that doing so would be futile because the section 1983 claims had been dismissed after Fox Rothschild and the Bermans had been afforded qualified immunity. Since we will vacate the district court's order and remand both cases for further proceedings consistent with this opinion, this rationale is no longer applicable.

The district court gave a second ground for refusing to grant Jordan and Mitchell leave to amend:

Although never alleged in their complaint or raised in their response to defendants' motion, plaintiffs now state that the corporate plaintiff assigned its rights to the individual plaintiffs for claims against the landlord or its agents. Although a copy of the purported assignment has not been provided, it was apparently executed during a transaction on April 1, 1989 wherein Jordan, Mitchell ceased business operations. This fact was clearly known to plaintiffs for almost two years prior to the filing of the complaint, and cannot possibly be considered to be newly discovered.

*Fox Rothschild II,* 792 F.Supp. at 395 (footnotes omitted). The court also noted that if it were to accept this belated argument, Jordan Mitchell, Inc., the corporate plaintiff, would lack standing. *Id.* at 395 n. 3. Under the circumstances that then existed, we cannot say the district court abused its discre-

tion in denying the stockholders' motion for leave to amend because of their delay in bringing it. Nevertheless, on remand, the issue can recur; and, if it does, the district court may have to reconsider the stockholders status as real parties in interest on the section 1983 claims who should be substituted as successors to Jordan Mitchell, Inc.'s section 1983 claims.

## XII. *Conclusion*

The district court's order granting Fox Rothschild's motion to dismiss and its order granting the Bermans' request for summary judgment on Jordan Mitchell, Inc.'s section 1983 claims will be vacated. The district court's order granting the Bermans' motion for summary judgment on Jordan Mitchell, Inc.'s RICO claim will be affirmed. Its order dismissing the stockholders' request to amend their complaint to allege that they had become real parties in interest by assuming Jordan Mitchell, Inc.'s debts will be affirmed, subject to reconsideration if it recurs on remand. The district court's order denying the motions of the Bermans and Fox Rothschild for sanctions under Rule 11 and Rule 26(b) will also be affirmed. The district court's conclusion that Jordan Mitchell, Inc.'s section 1983 claim that Pennsylvania's procedure for the entry of judgment by confession did not violate the Fourteenth Amendment will be affirmed because the Bermans and Fox Rothschild did not cause state action sufficient to make a private person a state actor when they merely confessed judgment against Jordan Mitchell, Inc. The district court's determination that use of Pennsylvania's standard post-judgment execution procedure in actions on confession of judgment which allows garnishment of a judgment debtor's property without pre-deprivation notice and hearing violates due process will be vacated and these cases will be remanded for consideration of whether Jordan Mitchell, Inc. knowingly and voluntarily waived its due process rights to pre-deprivation notice and hearing. The district court's orders dismissing Jordan Mitchell, Inc.'s supplemental state action will be vacated for further consideration under 28 U.S.C.A. § 1367 in light of developments in the cases against the Bermans and Fox Rothschild on remand.

## XIII.

These cases will be remanded to the district court for further proceedings consistent with this opinion.

*Costs shall be taxed against appellees Arnold T. Berman and Myron J. Berman at Docket No. 93–1424, against appellee Fox, Rothschild, O'Brien & Frankel at Docket No. 93–1435 and against cross-appellants Arnold T. Berman and Myron J. Berman at Docket No. 93–1456.*